**UNITED STATES, Appellee,**

v.

**Tyrone DAVIS, Corporal, U.S. Marine Corps, Appellant.**

No. 97–5001.

Crim.App. No. 95–0098.

U.S. Court of Appeals for the Armed Forces.

Argued Nov. 4, 1997.

Decided March 12, 1998.

Sullivan, J., filed dissenting opinion.

For Appellant: *Lieutenant Syed N. Ahmad,* JAGC, USNR (argued); *Major Michael R. Osborn,* USMC (on brief).

For Appellee: *Lieutenant Commander Nancy Blankenship Jones,* JAGC, USN (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief).

*Amicus Curiae* on behalf of Appellee: *Captain Mitchel Neurock* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Brenda J. Hollis*—For Appellate Government Division, USAF.

*Opinion of the Court*

CRAWFORD, Judge:

On mixed pleas, appellant was convicted of conspiracy to commit assault and battery, violation of a lawful general order, assault with a dangerous weapon, and communication of a threat, in violation of Articles 81, 92, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 892, 928, and 934, respectively. The convening authority approved the adjudged sentence of a bad-conduct discharge, 12 months' confinement, forfeiture of $250 pay per month for 12 months, and reduction to pay grade E–1. The Court of Criminal Appeals affirmed the findings and sentence. 45 MJ 681 (1997).

■ The Judge Advocate General of the Navy certified the following issue to this Court:

> WHETHER UNDER UCMJ ARTICLE 128, AN ASSAULT WITH A DANGEROUS WEAPON CAN BE COMMITTED WITH AN UNLOADED OR INOPERABLE GUN IF THE VICTIM HAS A REASONABLE APPREHENSION OF DEATH OR GRIEVOUS BODILY HARM, AND THE VICTIM IS UNAWARE OF WHETHER THE GUN IS LOADED OR OPERABLE; AND, IF SO, DID THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS CORRECTLY DETERMINE THE MAXIMUM PUNISHMENT FOR SUCH AN OFFENSE TO BE IN ACCORDANCE WITH THE MANUAL FOR COURTS–MARTIAL, UNITED STATES (1995 EDITION), PART IV, PARAGRAPH 54e(8)(b).

We hold that an unloaded weapon is not a dangerous weapon under the President's interpretation of Article 128, under the circumstances of this case. For this reason, we further hold that the Court of Criminal Appeals did not determine correctly appellant's maximum punishment in accordance with the Manual for Courts–Martial, United States (1995 ed.).

## FACTS

Appellant's court-martial arose after he and numerous others participated in a form of hazing known as a "blanket party" or a "fumble." The alleged purpose of a "fumble" or "blanket party" is to censure Marines who do not live up to the expectations of their organization. In this case, a group of about ten drunk Marines, including appellant, grabbed, kicked, and hit the victim repeatedly. 45 MJ at 682.

Appellant chose to take the activity even farther by pointing a .380 pistol at the victim's head and stating, "I ought to cap you now." Understandably, the victim feared for his life and believed appellant would shoot him.

Appellant was charged with assault with a dangerous weapon for pointing a loaded pistol at the victim. Appellant pled guilty to simple assault on the grounds that the weapon was unloaded and, therefore, was not a dangerous weapon. The military judge recognized that the weapon was unloaded but convicted appellant of aggravated assault, holding that "the unloaded weapon used by [appellant] was in fact a dangerous weapon." In so ruling, the military judge disregarded contrary language in paragraph 54c(4)(a)(ii) of Part IV of the Manual, expressly relying on *United States v. Sullivan,* 36 MJ 574 (ACMR 1992), overruled by *United States v. Turner,* 42 MJ 689 (Army Ct.Crim.App.1995) (en banc).

The Court of Criminal Appeals initially set aside appellant's conviction for assault with a dangerous weapon and affirmed, instead, the lesser-included offense of assault consummated by a battery. Unpub. op. at 2–6. However, it then withdrew its panel decision on its own motion and set the case for reconsideration *en banc.* The majority of that court then upheld appellant's conviction for aggravated assault, expressly rejecting the President's construction of assault with a dangerous weapon in paragraph 54c(4)(a)(ii) of Part IV of the Manual. The lower court reasoned that when there is an offer-type assault, as opposed to an attempt-type assault, whether an unloaded or inoperable weapon is dangerous depends upon whether the victim fears the weapon. 45 MJ at 685.

## DISCUSSION

In *United States v. Lopez,* 35 MJ 35, 39 (1992), this Court explained that the

> military, like the Federal and state systems, has hierarchical sources of rights. These sources are the Constitution of the United States; Federal Statutes, including the Uniform Code of Military Justice; Executive Orders containing the Military Rules of Evidence; Department of Defense Directives; service directives; and Federal common law.... Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules

that are constitutional and provide greater rights for the individual....

The Government urges this Court to interpret Article 128 in such a way that an unloaded weapon is considered dangerous or a "means or force likely to produce death or grievous bodily harm." Applying the hierarchy of rights, the first question is whether the Constitution addresses the issue. In this case, it does not. Next, we examine the federal statute, Article 128. It is not clear from either the plain meaning of the statute or its legislative history that an unloaded weapon qualifies as a dangerous weapon under the statute. Furthermore, it is certainly not inconsistent with Article 128 that an unloaded weapon does not qualify as a dangerous weapon. Consequently, we must look to the Executive branch of government to see if it has provided guidance on the matter.

The President establishes the Manual for Courts–Martial by Executive Order. The Manual includes sections on the elements of proof necessary to make out offenses in the UCMJ. The Manual also contains explanations of these elements. Paragraph 54c(4)(a)(ii) of Part IV of the Manual explains that "an unloaded pistol, when presented as a firearm and not as a bludgeon, is not a dangerous weapon or a means of force likely to produce bodily harm, whether or not the assailant knew it was unloaded."

In some civilian jurisdictions, whether a weapon is dangerous depends not on whether the weapon is loaded but upon the apprehension felt by the victim. *See, e.g., McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986); *United States v. Hunter*, 101 F.3d 82 (9th Cir.1996); *Herndon v. State*, 563 So.2d 1065 (Ala.1990). It is beyond cavil that, when a weapon is pointed at someone, that person normally will fear death or grievous bodily harm.

However, the Manual has a different test for offer-type assaults. It is clear from the language of paragraph 54(c)(4)(a)(ii) that, for purposes of aggravated assault under Article 128, the President intended for a weapon to be considered dangerous only if loaded.

We note that we are not bound by the President's interpretation of the elements of substantive offenses. As we stated in *United States v. Mance*, 26 MJ 244, 252 (1988):

> [W]hile the views of the drafters of the various Manuals in writing the provisions just discussed and those of the President in promulgating them are important, they are not binding on this Court in fulfilling our responsibility to interpret the elements of substantive offenses—at least, those substantive crimes specifically delineated by Congress in Articles 77 through 132 of the Code, 10 USC §§ 877–932, respectively.

■ Article 36(a), UCMJ, 10 USC § 836(a), gives the President express authority to promulgate rules under Parts II and III of the Manual. Part IV of the Manual is not expressly governed by Article 36(a). Nonetheless, where the President unambiguously gives an accused greater rights than those conveyed by higher sources, this Court should abide by that decision unless it clearly contradicts the express language of the Code.

There is no indication that the President's explanation of aggravated assault contradicts the Code in any way. There is also no indication that Congress intended some other construction of aggravated assault. The Manual has indicated that an unloaded firearm is not a dangerous weapon since 1951. *See* para. 207(b)(1), Manual for Courts–Martial, United States, 1951; para. 207(c)(1), Manual for Courts–Martial, United States, 1969 (Revised edition); para. 54c(4)(a)(ii), Part IV, Manual for Courts–Martial, United States, 1984, and 1995 edition. Congress could have changed this concept at any time if it disagreed. The President could change it easily as well.

■ Because there is no contradiction with the Code, and in deference to the President's authority and the hierarchy of rights, we answer the certified question in the negative. We hold that an unloaded pistol is not a dangerous weapon under the President's interpretation of Article 128. Since this interpretation is favorable to appellant and not inconsistent with the language of Article 128, we will not disturb the President's narrowing

construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution.* We further hold that the Navy–Marine Corps Court of Criminal Appeals did not correctly determine appellant's maximum punishment.

For the reasons set forth above, we reverse the decision of the United States Navy–Marine Corps Court of Criminal Appeals. We return appellant's case to the Judge Advocate General of the Navy for disposition of the case consistent with this opinion.

Chief Judge COX and Judges GIERKE and EFFRON concur.

---

* The assertion in the dissent—that the majority "holds that the handgun used in this case was not a dangerous weapon," 47 MJ at 488,—does not accurately describe the view of the majority. The rule concerning unloaded firearms was promulgated by the President, not by the majority of this Court. Since 1951, each President who has promulgated a revised version of the Manual for Courts–Martial has restated this rule without substantive change. The basis of the majority opinion is that "we will not disturb the President's narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution." 47 MJ at 486–87. The majority opinion does not constrain the President's authority to change the rule, including a change that would accommodate the policy concerns set forth in the dissenting opinion.

A noted authority on military law has explained why courts should be hesitant to substitute their views for the President's rules when the President, as the Commander-in-Chief of the armed forces and as the nation's Chief Executive, promulgates rules for courts-martial that are more favorable to servicemembers than the minimum requirements of the Constitution or the Uniform Code of Military Justice. He states:

What the due process hierarchy dictates is that the more protective of the due process sources (the Constitution, the UCMJ, the Manual, the regulations, or military case law) must prevail. In this way, the military justice system will be applied in a consistent, and more importantly, fair fashion.

D. Schlueter, *Military Criminal Justice: Practice and Procedure* § 1–1(B) at 8–9 (4th ed.1996) (footnote omitted). He also notes that a contrary approach would "only reinforce the notion that military tribunals will interpret the rules in such a way that the offender is disciplined, if necessary, at the cost of justice. Military criminal justice deserves better." *Id.*

SULLIVAN, Judge (dissenting):

In a scene that could be taken from the opening part of the movie "A Few Good Men," ten Marines held a dangerous and unauthorized hazing ritual (called a "blanket party") with a Marine who was not performing up to "Corps standards" in a training exercise at Twentynine Palms, California. The victim, Private First Class Simon, was alone in his barracks area when the ten Marines who decided to punish him grabbed him, threw him to the floor, bound his feet and ankles together with tape, kicked him, punched him, and finally one Marine (Corporal Davis) put a gun to his head and said, "You're nothing but a pussy. I ought to cap [kill] you now." Record at 72. The gun *may* have been unloaded.[1] However, Private

The dissent relies on the Supreme Court's decision in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), for the proposition that an unloaded gun is a dangerous weapon, "as a matter of federal criminal law." 47 MJ at 488. The dissent argues that the Supreme Court's interpretation of "dangerous weapon," as used in the federal bank robbery statute, 18 USC § 2113(d), "must be followed for purposes of Article 128." 47 MJ at 489.

We do not agree that *McLaughlin* controls the disposition of the present case. *McLaughlin* is a narrow ruling that addressed "whether an unloaded handgun is a 'dangerous weapon' within the meaning of the federal bank robbery statute." 476 U.S. at 16, 106 S.Ct. at 1677–78. The Supreme Court's interpretation of "dangerous weapon" in this limited context does not apply "as a matter of federal criminal law," and it is not necessary that it "be followed for purposes of Article 128." The limited scope of *McLaughlin* is reinforced by the Supreme Court's reference to the legislative history of § 2113(d) as an expression of congressional intent. *Id.* at 18 n. 3, 106 S.Ct. at 1678 n. 3.

The dissent also cites our prior decision in *United States v. Milton*, 46 MJ 317 (1997). *Milton* is inapposite to the present situation. The issue in that case was whether appellant could be convicted of a simple offer-type assault. In addition, the assault involved a loaded weapon. The case did not involve an interpretation of the statutory or Manual provisions governing aggravated assault.

1. There was contradictory evidence at the trial as to whether the gun was unloaded. The gun, hidden after the assault, was found 1 week later with three rounds loaded in it. Pros. Ex. 1. Davis, in his testimony (viewed by the Government as self-serving), stated that the gun was "totally unloaded." The judge, however, resolved the factual issue and found the gun to be unloaded.

First Class Simon did not know this and thought Davis "had my life in his hands." *Id.*

For his role in the unauthorized "blanket party," Davis was convicted of assault with a dangerous weapon among other charges. The majority reduces this crime to simple assault because it holds that the handgun used in this case was not a dangerous weapon. In my view, prosecutors, law enforcement officials, and perhaps *all* victims of armed assaults who have looked into the barrel of a gun or who have had a gun held to their head would not agree with that decision. I certainly do not. I refuse to legally turn a sword into a plowshare or a Barretta into a banana.

In the circumstances of this case, I would hold that the unloaded gun held to the head of the Marine who thought it was loaded was "a dangerous weapon" under Article 128, Uniform Code of Military Justice, and that appellant committed an aggravated assault. I would rely on the fact that this was an offer-type assault (reasonable fear of victim is basis of assault), plus the law of the Supreme Court in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986) (unloaded gun is a dangerous weapon under the federal bank robbery statute). The majority relies on para. 54c(4)(a)(ii), Part IV, Manual for Courts-Martial, United States, 1984 (1994 ed.), but it provides an untenable explanation of the term "dangerous weapon" found in Article 128(b)(1).

More particularly, the majority today rejects Supreme Court precedent holding that an unloaded gun is "a dangerous weapon" as a matter of federal criminal law. *See United States v. McLaughlin, supra.* On the basis of apparently gratuitous comment in a Manual explanation of other language in Article 128 ("or other means or force likely to produce death or grievous bodily harm"), the majority narrowly constricts the "a dangerous weapon" language of this statute, contrary to its plain meaning. Even assuming the Manual explanation applies also to the words "a dangerous weapon" in Article 128(b), I cannot join the majority. In my view, this explanation is inconsistent with Article 128 and infringes on Congress's substantive criminal law-making powers under Article I, § 8, Clause 14, of the United States Constitution. *See generally United States v. Gonzalez*, 42 MJ 469, 474 (1995); *United States v. Henry*, 35 MJ 136, 137 (CMA 1992).

When reviewing statutory questions, it is helpful to note the precise statutory language under review in the statutory context in which it exists. *See* 2A *Sutherland Statutory Construction* §§ 47.01 and 47.02 at 136–39 (5th ed.1992). Article 128 provides:

(a) *Any person* subject to this chapter *who attempts or offers with unlawful force or violence to do bodily harm to another person*, whether or not the attempt or offer is consummated, *is guilty of assault* and shall be punished as a court-martial may direct.

(b) Any person subject to this chapter who—

(1) commits an assault *with a dangerous weapon or other means or force likely to produce death or grievous bodily harm;* or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon; is guilty of aggravated assault and shall be punished as a court-martial may direct.

(Emphasis added.) In my view, Congress clearly intended this statute [2] to prevent assaults by servicemembers using weapons that are actually dangerous or which are reasonably perceived to be dangerous. *See United States v. Milton*, 46 MJ 317, 319 (1997).

**2.** The Supreme Court reached a similar conclusion concerning Congress' intent in enacting 18 USC § 2113(d). In *McLaughlin v. United States*, 476 U.S. 16, 18 n. 3, 106 S.Ct. 1677, 1678 n. 3, 90 L.Ed.2d 15 (1986), it said:

The floor debate on the provision that became § 2113(d) indicates that Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article (such as a wooden gun) as "dangerous" within the meaning of the statute. *See* 78 Cong. Rec. 8132 (1934)(colloquy among Reps. Sumners, Blanton, and Dockweiler).

The Supreme Court succinctly stated why an unloaded gun is a dangerous weapon:

> Three reasons, each independently sufficient, support the conclusion that an unloaded gun is a "dangerous weapon." First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*McLaughlin,* 476 U.S. at 17–18, 106 S.Ct. at 1678 (footnote omitted). This reasoning is especially applicable in the military, where the first rule of combat-weapon handling is that *all guns are to be treated as loaded weapons.*[3]

The majority provides no basis for distinguishing the dangerous-weapon aspect of the federal criminal law in *McLaughlin* and the federal criminal law at issue in this case. The "dangerous weapon" explanation and holding by the Supreme Court in *McLaughlin* should apply with equal force to the law at issue in this case as a matter of common law (and common sense). Outside of the different numbers on these two laws, I do not see the reason why in one law an unloaded weapon is a dangerous weapon and not a dangerous weapon in the other. If appellant had committed this assault while robbing a federally insured bank, we would have, under the majority's reasoning, the unlikely result of the weapon being viewed as a dangerous weapon for the purpose of the bank robbery but not a dangerous weapon for purposes of an assault under Article 128. This result I cannot accept.

I again note that this case involves an offer-type assault. *Cf. United States v. Joseph,* 37 MJ 392, 398 (CMA 1993) (Sullivan, C.J., concurring)(describing three theories for conviction of predicate offense of simple assault). However, the majority concedes that when a serviceperson threatens to shoot an unloaded gun aimed at the head of a victim who believes the gun is loaded, the victim is in reasonable apprehension not of bodily harm but death or grievous bodily harm. Nevertheless, the majority rejects common sense in this case because of the Manual's unrevised reliance on archaic dicta in several earlier cases from this Court. *See United States v. Smith,* 4 USCMA 41, 15 CMR 41 (1954); *United States v. Norton,* 1 USCMA 411, 4 CMR 3 (1952).

In sum, the Supreme Court has held that an unloaded gun is a dangerous weapon. *See United States v. McLaughlin, supra.* Admittedly, the statute under review in *McLaughlin* involved the crime of assault while robbing a federal bank. *See* 18 USC § 2113(d). Nevertheless, the rationale articulated by a unanimous Supreme Court construing the same statutory term at issue before our Court has not been distinguished and, therefore, it must be followed for purposes of Article 128. *See generally United States v. Allbery,* 44 MJ 226 (1996)(follow it or distinguish it rule of precedent). *McLaughlin, sub silentio,* overrules *Price v. United States,* 156 F. 950 (9th Cir.1907), on which our earlier dicta and paragraph 54c(4)(a)(ii) of Part IV of the Manual were based.

I would allow Corporal Davis' conviction for aggravated assault to stand.

---

**3.** Real life in the armed forces is contrary to the "Barretta into bananas" logic of the majority. For a warrior, all weapons are to be treated as loaded. For example, the Guidebook for Marines (11th revised ed.1966) makes clear the military reality in the case before us:

> Safety Precautions
>
> A weapon is just as safe as the man behind it, regardless of how well built it is or how many safety features it has. *Unless the man who handles it respects it as a deadly weapon, it*

*is a source of danger to him and everyone near him.* Many tragic accidents can be avoided if everyone will remember a few simple safety precautions when handling firearms.
>
> A. General Rules.
>
> 1. *Consider every weapon to be loaded* until you examine it and find it to be unloaded. Never trust your memory in this respect. There is an old saying among hunters that "the empty gun shoots the loudest."
>
> *Id.* at 299 (emphasis added).