IN THE CASE OF


UNITED STATES, Appellee

v.

Daniel F. CZESCHIN, Fireman Apprentice
U.S. Coast Guard, Appellant

No. 01-0222

Crim. App. No. 1125

United States Court of Appeals for the Armed Forces

Argued October 23, 2001

Decided March 14, 2002


EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and GIERKE and BAKER, JJ., joined. SULLIVAN, S.J., filed an opinion concurring in the result.


Counsel


For Appellant: Lieutenant Junior Grade Loren A. Friedel (argued).


For Appellee: Lieutenant Daniel J. Goettle (argued); Lieutenant Mark A. Cunningham (on brief); Commander C.P. Reilly.


Military Judge: Robert Bruce


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of false official statement, wrongful use of marijuana, wrongful use of marijuana while on board a vessel used by the armed forces, wrongful introduction of marijuana onto a vessel used by the armed forces with intent to distribute, wrongful introduction of cocaine onto a vessel used by the armed forces, wrongful distribution of marijuana while on board a vessel used by the armed forces, wrongfully importing marijuana into the customs territory of the United States while on board a vessel used by the armed forces, wrongfully importing cocaine into the customs territory of the United States while on board a vessel used by the armed forces, and impeding an investigation, in violation of Articles 107, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 USC §§ 907, 912a and 934, respectively.  He was sentenced to a bad-conduct discharge, confinement for two years, total forfeitures, and reduction to E-1.  The convening authority approved the sentence but suspended confinement in excess of fifteen months for a period of twelve months, and the Court of Criminal Appeals affirmed. 54 MJ 656 (2000).

On appellant's petition, we granted review of the following issue:

> WHETHER APPELLANT WAS DENIED A FAIR SENTENCING HEARING WHEN THE MILITARY JUDGE DENIED APPELLANT'S MOTION TO DISMISS AND CONSIDERED APPELLANT'S DISHONEST STATEMENT TO INVESTIGATIVE AGENTS AN OFFICIAL STATEMENT IN VIOLATION OF UCMJ, ARTICLE 107, WHEN M.C.M., PART IV, PARAGRAPH 31c(6), EXPRESSLY EXCLUDES STATEMENTS MADE BY AN ACCUSED TO INVESTIGATIVE AGENTS FROM THE DEFINITION OF OFFICIAL STATEMENTS.

We affirm, for the reasons set forth below.

## I. BACKGROUND

### A. Procedural Setting

Appellant, who was suspected of drug-related offenses, was interviewed by agents of the Coast Guard Investigative Service (CGIS) on June 19, 1998, as part of an official investigation. After waiving his statutory rights against self-incrimination under Article 31(b), UCMJ, 10 USC § 831(b), appellant provided a sworn, written statement which included the following statements: "I do not smoke marijuana at all," and "I do not know of anyone who currently smokes marijuana." His involvement with drugs and his subsequent statement to the CGIS led to the charges detailed at the outset of this opinion.

At trial, appellant moved unsuccessfully to dismiss the false official statement charge under RCM 907(b)(1)(B), Manual for Courts-Martial, United States (2000 ed.),[*] on the ground that it did not state an offense.  Appellant contended that a statement made to an investigator is not an "official statement" for purposes of a prosecution under Article 107 if the person making the statement did not have an independent duty to speak, citing the explanation of Article 107 in paragraph 31c(6)(a) of Part IV of the Manual.

### B. False Official Statements under Article 107

Article 107 provides that a person subject to the UCMJ "who, with intent to deceive, . . . makes any . . . false official statement knowing it to be false, shall be punished as a court-martial may direct."  In United States v. Solis, 46 MJ 31 (1997), we held that statements to investigators could be prosecuted as false official statements.  Solis also rejected the so-called "exculpatory no" doctrine, thereby making it clear that a person may be prosecuted under Article 107 for a statement that consists solely of a negative response to a question from a law enforcement agent.  Id. at 34; see Brogan v.

---

[*] Cited provisions of the current Manual are identical to the ones in effect at the time of appellant's court-martial.

United States v. Czeschin, No. 01-0222/CG

United States, 522 U.S. 398 (1998) (rejecting application of the exculpatory-no doctrine to prosecutions for false statements under 18 USC § 1001).

    C. Explanatory Material in the Manual for Courts-Martial

    In Solis, we took note of paragraph 31c(6)(a) of Part IV of the Manual, supra, which states:

>        A statement made by an accused or suspect
>        during an interrogation is not an official
>        statement within the meaning of the article
>        if that person did not have an independent
>        duty or obligation to speak.

We observed that

>        [b]ecause this guidance [in paragraph
>        31c(6)] is not based upon the statutory
>        elements of the offense [under Article 107],
>        it does not impose upon the prosecution an
>        affirmative obligation to prove such an
>        independent duty or obligation.

46 MJ at 35.  We also noted that the Manual's guidance could be interpreted as serving at least three different purposes:

>        First, it could be seen as nothing more than
>        an expansive description of dicta from this
>        Court's decisions that predate the 1984
>        revision of the Manual, with no intent to
>        limit prosecutions.  Second, it could be
>        viewed as protecting an accused against
>        overcharging.  Third, it could be viewed as
>        guidance for the conduct of investigations .
>        . . .

5

Id.  In view of the fact that the accused in Solis did not rely on the Manual's provision at trial, we held that he could not assert it on appeal.  We reserved judgement as to whether the applicable Manual provisions were "intended to establish a procedural right that can be invoked by an accused or whether they constitute internal guidelines intended only to regulate government conduct."  Id. at 35-36, citing United States v. Caceres, 440 U.S. 741 (1979)(violation of Internal Revenue Service rule regarding recording conversations with taxpayers, which is required neither by the Constitution nor by statute, does not require exclusion of evidence).

## D. Hierarchical Sources of Rights in the Military Justice System

Our Court has observed that there are "hierarchical sources of rights" in the military justice system, including the Constitution, federal statutes, Executive Orders, Department of Defense Directives, service directives, and federal common law. United States v. Lopez, 35 MJ 35, 39 (CMA 1992).  "Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules that are constitutional and provide greater rights for the individual." Id.

In United States v. Davis, 47 MJ 484 (1998), we discussed the related question of the relationship between the Manual's provisions and individual rights. We noted that the President has express authority under Article 36(a), UCMJ, 10 USC § 836(a), to promulgate the rules of procedure and evidence set forth in Parts II and III of the Manual for Courts-Martial. We also observed that, by contrast, the President's interpretations of substantive offenses in Part IV of the Manual -- the Part at issue in the present case -- are not binding on the judiciary, which has the responsibility to interpret substantive offenses under the Code. Id. at 486, citing United States v. Mance, 26 MJ 244 (1988). We emphasized, however, the difference between Presidential interpretation of substantive offenses and Presidential issuance of rules in Part IV protecting the rights of servicemembers, making it clear that the President has the authority to grant greater rights under Part IV than might be provided by statute. As a result, when a Presidential rule is unambiguous in terms of granting greater rights than provided by a higher source, the rule governs, unless it clearly contradicts the express language of the UCMJ. Id. at 486.

In Davis, we held the rule at issue -- paragraph 54(c)(4)(a)(ii) of Part IV of the Manual -- was unambiguous, with no indication on the face of the rule that it served any purpose other than establishment of a limitation. In that

context, we concluded that the rule constituted "an appropriate Executive branch limitation on the conduct subject to prosecution" under Article 128, UCMJ, 10 USC § 928 (assault). Id. at 486-87. Our decision in Davis reflected the fundamental relationship between the Manual's provisions and the role of the judiciary, as emphasized in the Drafters' Analysis of the Rules for Courts-Martial:

> [A]mendment of the Manual is the province of the President. Developments in the civilian sector that affect the underlying rationale for a rule do not affect the validity of the rule except to the extent otherwise required as a matter of statutory or constitutional law. The same is true with respect to rules derived from the decisions of military tribunals. Once incorporated into the Executive Order, such matters have an independent source of authority and are not dependent upon continuing support from the judiciary.

Manual, supra at A21-3.

## II. DISCUSSION

In Solis, we left open the question as to whether paragraph 31c(6)(a) establishes a binding limitation or merely reflects a non-binding interpretation of case law. Our suggestion in Solis that the provision could be viewed either as a binding limitation or non-binding guidance reflects the fact that paragraph 31c(6)(a) -- unlike the provision at issue in Davis -- contains a facial ambiguity with respect to its purpose.

Paragraph 31c(6)(a) expressly provides that a statement is "not an official statement <u>within the meaning of the article</u>" in the absence of an independent duty or obligation to speak, which suggests that it may serve simply as a reflection of case law under Article 107 rather than as a rule of limitation.  Although the phrase "within the meaning of the article" does not demonstrate, by itself, that the rule is not a binding limitation, the facial ambiguity as to purpose requires us to examine other sources of interpretation, including the drafting history.

In that regard, we note the 1951 Manual, promulgated in conjunction with implementation of the UCMJ, provided no such limitation.  <u>See</u> para. 186, Manual for Courts-Martial, United States, 1951.  Subsequently, our Court issued several opinions indicating that statements to investigators were not "official statements" under Article 107.  <u>See</u> <u>United States v. Aronson</u>, 8 USCMA 525, 25 CMR 29 (1957);  <u>United States v. Washington</u>, 9 USCMA 131, 25 CMR 393 (1958).  The 1969 Manual was amended to include language similar to the present version.  <u>See</u> para. 186, Manual for Courts-Martial, United States, 1969 (Rev. ed.).  The Drafters' Analysis simply cited the case law as the basis for the change.  <u>Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition</u>, Dept. of the Army Pamphlet 27-2 at 28-10 (July 1970).  The Drafters' Analysis of the 1984

Manual, which is the source of the present version, cited the previous version, as well as Aronson, Washington, and a later case, United States v. Davenport, 9 MJ 264 (CMA 1980). Manual for Courts-Martial, United States, 1984, at A21-92.

Neither the drafting history, nor any other source cited to us by the parties, demonstrates that the pertinent language in paragraph 31c(6)(a) was included in the Manual for any purpose other than as an attempt to reflect an interpretation of Article 107 under then-existing case law -- an interpretation that is no longer valid. See Solis, supra at 33-34. In light of the fact that paragraph 31c(6)(a), on its face, raises a question as to whether it is a binding rule or non-binding guidance, and in light of the drafting history, we conclude that it does not establish a right that may be asserted by an accused who is charged with violating Article 107.

III. CONCLUSION

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed.

United States v. Czeschin, No. 01-0222/CG

    SULLIVAN, Senior Judge (concurring in the result):

    Appellant, who gave a false, sworn, written statement to criminal investigators after he waived his statutory rights against self-incrimination, can be prosecuted for making a false official statement in violation of Article 107, Uniform Code of Military Justice.  United States v. Prater, 32 MJ 433, 438 (CMA 1991); see United States v. Solis, 46 MJ 31, 36 (1997) (Sullivan, J., concurring in the result).

    One need not speculate on the "drafting history" of the Manual for Courts-Martial to reach this position.  In United States v. Prater, supra, this Court clearly stated, "[S]tatements to military criminal investigators can now be considered official for purposes of Article 107.  Finally, where warnings under Article 31 are given to the criminal suspect, as in the present case, his duty to respond truthfully to criminal investigators, if he responds at all, is now sufficient to impute officiality to his statements for purposes of Article 107."

    In my view, there is an independent duty not to lie to investigators once one has waived his or her self-incrimination rights.  The Constitution and Article 31 provide rights and protect the serviceperson until those rights are waived.  In issuing paragraph 31c(6)(a), Manual for Courts-Martial, United States (1998 ed.), the President did not intend to create a "safe harbor" for a serviceperson to lie to investigators without punishment.

Once a suspect has waived his self-incrimination rights, the suspect on active duty has attendant duties and responsibilities. See United States v. Medley, 33 MJ 75, 77 (CMA 1991) ("The policy basis for reporting misconduct in the military is more than powerful; it is axiomatic."); see, e.g., U.S. Navy General Regulation 1137 (Sept. 14, 1990) (duty to report offenses under Code unless criminally involved). The military suspect, if he waives his rights and chooses to talk to investigators, cannot mislead or thwart an investigator with lies, especially, as in this case, where a sworn, false, written statement was given to the investigators. See also United States v. Arriaga, 49 MJ 9 (1998) (holding that military accused can be prosecuted for obstruction of justice in similar circumstances). Logic and our case law will not allow appellant to escape prosecution under Article 107. See, e.g., United States v. Prater, 32 MJ at 438; United States v. Dorsey, 38 MJ 244, 248 (CMA 1993); United States v. Frazier, 34 MJ 135 (CMA 1992); United States v. Gay, 24 MJ 304, 306 n.3 (CMA 1987).