# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32694

————————————

## UNITED STATES
*Appellee*

**v.**

## Jennesis V. DOMINGUEZ-GARCIA
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 October 2022

————————————

*Military Judge:* Mark W. Milam

*Sentence:* Sentence adjudged 14 April 2021 by SpCM convened at Robins Air Force Base, Georgia. Sentence entered by military judge on 30 April 2021: bad-conduct discharge, confinement for 7 days, reduction to E-1, and a reprimand.

*For Appellant:* Major David L. Bosner, USAF; Angel Gardner (Legal Extern).[1]

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges.*

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

[1] Ms. Gardner was supervised by an attorney admitted to practice before the court.

POSCH, Senior Judge:

It is not every day that an appellant asks this court to tell her what offense she pleaded guilty to at her court-martial. For the first time on appeal, Appellant contends that the military judge erred by conducting a providence inquiry for aggravated assault with a dangerous weapon instead of simple assault as charged. The Government concedes this was error. We agree and conclude that Appellant's pleas established the elements of simple assault and are provident. Because the military judge sentenced Appellant under a misapprehension that she was charged with a more serious offense, and that her guilty plea to the aggravating elements of that offense was provident when it was not, the sentence is set aside and the record returned to The Judge Advocate General for further proceedings consistent with this opinion.

## I. BACKGROUND

The facts are undisputed. Two months after Appellant confronted another Airman by pointing a handgun at him at point-blank range, Appellant's squadron commander preferred three charges. One charge alleged that Appellant brought a firearm onto Robins Air Force Base (AFB), Georgia. A second alleged that Appellant communicated a threat to use that firearm to injure the victim. In a third charge arising from the same incident as the alleged threat, Appellant was accused of pointing an unloaded firearm at the victim. It is this third charge that we address in our decision.

After these incidents, Appellant was charged with dereliction of duty by "willfully" failing to refrain from bringing an unauthorized firearm onto Robins AFB (Charge I) and of communicating a threat to injure the victim with a firearm (Charge II) in violation of Articles 92 and 115, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 915, respectively.[2] Appellant was also accused of assaulting the same victim by pointing an unloaded firearm at him (Charge III) in violation of Article 128, UCMJ, 10 U.S.C. § 928. On 22 December 2020, the convening authority referred the three charges without modification to trial by special court-martial. Among the referred charges, the Specification of Charge III alleged the following:

> In that AIRMAN FIRST CLASS JENNESIS V. DOMINGUEZ-GARCIA, United States Air Force, 53d Air Traffic Control Squadron, Robins Air Force Base, Georgia, did, at or near Robins

---

[2] References to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

> Air Force Base, Georgia, on or about 21 October 2020, assault
> Airman First Class [LA], to wit: offering to do bodily harm to him
> by intentionally pointing an unloaded firearm at him.

## A. Court-Martial and Convening Authority's Decision on Action

When Appellant's court-martial convened on 12 April 2021, trial counsel announced the "general nature of the charges." As regards Charge III and its Specification, trial counsel stated that Appellant was accused of "assaulting" the victim "by intentionally pointing a[n] unloaded firearm at him."

Appellant elected trial by military judge alone and entered mixed pleas to the three offenses. As to Charge I and its Specification, Appellant pleaded guilty to bringing an unauthorized firearm onto Robins AFB, excepting the word "willfully," and substituting the word "negligently." The military judge accepted Appellant's pleas and, after a trial on this offense, Appellant was found guilty of negligent dereliction of duty in conformity with her plea. Appellant pleaded not guilty to Charge II and its Specification. Following trial counsel's unsuccessful attempt to add language to that specification, trial counsel announced that Charge II and its Specification were withdrawn and dismissed without prejudice, acknowledging that action was done with the convening authority's permission.[3] Appellant pleaded guilty to Charge III and its Specification, which the military judge, without objection and for the first time on the record, referred to as "the offense of *aggravated assault with a dangerous weapon* in violation of Article 128," UCMJ. (Emphasis added). The military judge accepted Appellant's pleas, and entered findings of guilty to Charge III and its Specification.

On 14 April 2021, the military judge sentenced Appellant to a bad-conduct discharge, confinement for seven days,[4] reduction to the grade of E-1, and a

---

[3] Trial counsel lined through "Charge II: Violation of the UCMJ, Article 115," writing, "Withdrawn and dismissed 12 April 2021," followed by her initials. Trial counsel also lined through the underlying specification, and did not renumber Charge III as Charge II, which was correct. Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 12.3.2.3. (18 Jan. 2019) (stating that after charges or specifications are withdrawn after arraignment when they have come to the attention of the military judge sitting alone, the remaining charges or specifications ordinarily are not renumbered).

[4] The military judge announced "no confinement" for Charge I and its Specification, and that Appellant was "[t]o be confined for seven days" "[f]or the Specification of *Charge II*," which had been withdrawn and dismissed two days earlier on 12 April 2021. (Emphasis added). No sentence to confinement was announced for Charge III and its Specification. Evidently, when announcing sentence, the military judge erroneously believed Charge "III" had been renumbered "II" after the communication of a threat offense was withdrawn and dismissed without prejudice. *Supra* n.3. This was error; however, Appellant claims no prejudice and we find none.

reprimand. During post-trial processing, Appellant waived her right to submit clemency matters and the convening authority did not disturb the sentence. The convening authority's Decision on Action Memorandum dated 29 April 2021, included language for the reprimand that had been adjudged. Among other things, the reprimand censured Appellant for having been convicted of *aggravated assault* with an unloaded firearm.

Appellant did not raise a motion under Rule for Courts-Martial (R.C.M.) 1104(b)(2)(B) to challenge the convening authority's decision or the reprimand specifically. *See also* R.C.M. 1104(b)(1)(F) (allowing post-trial motion to address "[a]n allegation of error in the convening authority's action"). On 30 April 2021, the military judge signed the entry of judgment (EoJ), which correctly stated the findings. In addition to specifying the wording of the reprimand, the sentence as entered by the military judge included a bad-conduct discharge, reduction to the grade of E-1, and seven days "[t]otal [c]onfinement."[5]

## B. Appeal

Appellant initially filed a brief in support of three assignments of error with the court. In that pleading, Appellant asked whether (1) the military judge abused his discretion by accepting her pleas of guilty to Charges I and III and their Specifications because the military judge failed to establish an adequate factual or legal basis to support those pleas; and (2) trial defense counsel were ineffective, in four respects, by (a) failing to file a motion to suppress evidence derived from a search of her cell phone; (b) "advising [Appellant] to plead guilty when she was not, allowing her to plead guilty when she was not, and failing to file the appropriate motions and make appropriate legal arguments to win the case;" (c) failing to elicit or offer character evidence in presentencing; and (d) failing to submit post-trial matters for the convening authority's consideration. In addition to these issues, Appellant claimed that (3) the sentence, which included a bad-conduct discharge, was inappropriately severe.

After briefing was complete, Appellant moved for leave to file three supplemental assignments of error. For the first time, Appellant alleged that the military judge and counsel for both parties misapprehended the offense that the

---

[5] Appellant contends that the EoJ repeats an error in the Statement of Trial Results (STR). Instead of stating "0" days of confinement for the Specification of Charge I, "N/A" was entered, implying perhaps that no confinement could be adjudged. As observed *supra* n.4, a sentence of "no confinement" was imposed for this offense. Assuming error, we find relief is not warranted because the EoJ correctly states, "Total Confinement: 7 days." We reach this conclusion because *in this case* "N/A" where it appears after the Specification of Charge I in the STR and EoJ can be understood to mean no term of confinement was adjudged for this offense.

Government alleged in Charge III and its Specification. Appellant claimed that mistake "endured through the pendency of the court-martial."

We granted Appellant's motion, and the three supplemental assignments of error are before the court. In that pleading, Appellant asked whether (4) the court-martial had jurisdiction to accept a guilty plea, enter findings, and adjudge a sentence for aggravated assault with a dangerous weapon when the convening authority referred a charge and specification of simple assault with an unloaded firearm; (5) the military judge committed reversible error when he advised Appellant she was charged with aggravated assault with a dangerous weapon and provided the associated elements and definitions for a crime not charged; and (6) trial defense counsel were ineffective, in three additional respects, for failing do all of the following: (a) object to the military judge advising Appellant in the guilty-plea session as to a crime not charged, thereby permitting the military judge to convict Appellant of, and sentence Appellant for, a more serious crime than referred; (b) object to the trial counsel's argument that Appellant had been convicted of aggravated assault with a dangerous weapon; and (c) object to the convening authority's reprimand, which conveyed that Appellant had been convicted of aggravated assault with a dangerous weapon.

Although not specifically identified as an assignment of error, Appellant makes a point in her brief in support of her supplemental assignments of error that we find convincing. In that brief Appellant asserts "that the convening authority referred a charge and specification of simple assault with an unloaded weapon," but she "was sentenced for the more serious crime of aggravated assault with a dangerous weapon." Accordingly, in this opinion we examine Appellant's claim that she was prejudiced because the military judge misapprehended the offense alleged in Charge III and its Specification.

## II. DISCUSSION

We have reviewed this unusual record carefully and conclude that none of the assignments of error are reason to invalidate the providence of Appellant's pleas of guilty or the findings as entered.[6] For this reason, we affirm the

---

[6] Appellant's assignments of error are either without merit or mooted by our decision that finds Appellant was charged and convicted of simple assault. In this regard, assignments of error (1), (2)(a) and (b), (4), (5), and (6)(a)—to the extent Appellant claims that deficient representation permitted the military judge to convict Appellant of an offense that was not charged and more serious than referred—do not require discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). At the same time, assignments of error (2)(c) and (d), (3), (6)(a)—to the extent Appellant

findings. Nonetheless, with respect to Charge III and its Specification, we agree with Appellant that the military judge erred in sentencing Appellant for a more serious crime than she was charged with committing. The court finds error materially prejudicial to a substantial right of Appellant occurred in sentencing. For this reason, we set aside the sentence.

**A. Providence of Guilty Pleas to Charge III and its Specification**

The charge sheet shows that Appellant was accused in the Specification of Charge III with simple assault with an unloaded firearm, and not aggravated assault with a dangerous weapon. As noted above, the Government concedes this point. We agree for two reasons.

First, Congress intended an aggravated assault with a dangerous weapon would require both "intent to do bodily harm" and "a dangerous weapon." Article 128(b), UCMJ, 10 U.S.C § 928(b). Neither is expressly alleged in the specification to which Appellant entered a plea of guilty.[7] Unlike aggravated assault, simple assault with an unloaded firearm does not require proof that an accused specifically intended bodily harm or used a dangerous weapon. *Compare Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 77.b.(4)(a) (aggravated assault with a dangerous weapon), *with MCM*, pt. IV, ¶ 77.b.(1) (simple assault).

Second, an unloaded handgun is not a dangerous weapon within the meaning of Article 128, UCMJ, unless it is "used in a matter capable of inflicting death or grievous bodily harm." *MCM*, pt. IV, ¶ 77.c.(5)(a)(iii), *Dangerous weapon*. Here, Appellant was accused of "pointing an unloaded firearm." In *United States v. Davis*, our superior court concluded that "[t]he President intended for a weapon to be considered dangerous only if loaded." 47 M.J. 484, 486 (C.A.A.F. 1998) (observing "[t]he Manual has indicated that an unloaded firearm is not a dangerous weapon since 1951" and "[t]here is no indication that the President's explanation of aggravated assaults contradicts the Code in any way"); *see also MCM*, pt. IV, ¶ 77.d.(1)(b) (establishing maximum punishment for "simple assault" committed with an "unloaded firearm"). For these reasons, when the military judge called upon Appellant to plead, Appellant entered a plea of guilty to simple assault as charged.

Appellant pleaded guilty to Charge III and its Specification without entering into stipulations of fact with trial counsel, and without entering into a plea

---

claims that deficient representation allowed the military judge to sentence Appellant for a more serious crime than referred, and (6)(b) and (c) are mooted by our decision.

[7] *Cf. MCM*, pt. IV, ¶ 77.e.(8) (including "intent to inflict bodily harm," and suggesting inclusion of "loaded firearm," in sample specification for aggravated assault with a dangerous firearm).

agreement with the convening authority.[8] Early in the providence inquiry, the military judge advised Appellant of the two elements of simple assault with an unloaded firearm. However, he erred by including a third and fourth element that were essential only if Appellant was charged with aggravated assault with a dangerous weapon. The military judge explained to Appellant that "by pleading guilty . . . you are admitting that the following elements are true and accurately describe what you did." He then recited two elements that were essential, and a third and fourth element that were not:

> One, that at or near Robins Air Force Base, Georgia on or about 21 October 2020, you assaulted [LA] by offering to do bodily harm to him. Two[,] that you did so by intentionally pointing at [LA] with a certain weapon, to wit: a unloaded firearm. Three[,] that you intended to do bodily harm. And four[,] that the weapon was a dangerous weapon.

The military judge then correctly described the elements of simple assault in much the same way as they are explained in the *Manual for Courts-Martial*. He explained that "[a]n assault[ ] is an unlawful offer made with force or violence to do bodily harm to another whether or not the offer is consummated." *See MCM*, pt. IV, ¶ 77.c.(2)(a), *Definition of assault*. "An offer to do bodily harm is unlawful if it is done without legal justification or excuse and without the lawful consent of the victim." *See id.* "An offer[ ] to do bodily harm is an unlawful demonstration of violence by an intentional act or omission which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm." *See MCM*, pt. IV, ¶ 77.c.(2)(b)(ii), *Offer-type assault*. "The use of threatening words alone does not constitute an assault, however if the threatening words are accompanied by a menacing act or gesture there may be an assault, since the combination constitutes a demonstration of violence." *See MCM*, pt. IV, ¶ 77.c.(2)(c)(ii), *Threatening words*. The military judge explained, "Bodily harm means an offensive touching of another however slight." *See MCM*, pt. IV, ¶ 77.c.(1)(a).

During the providence inquiry, Appellant explained in a narrative how she confronted the victim in his dorm room about rumors he was spreading about her. In her telling, "I just snapped, pulled out the gun from my purse, and I waived [sic] the gun across my chest and my body before setting it down on my lap. The gun was pointed at [the victim] but my finger was not on the trigger and the safety was on." Appellant told the military judge that when she pointed

---

[8] When called upon to plead, trial defense counsel spoke for Appellant and stated, "To the Charge and its Specifications, III: Guilty." The military judge acknowledged that Appellant was "plead[ing] guilty to Charge III and its Specification." Appellant claims no prejudice from the irregularity in the pleas as entered for her and we find none.

the gun she said, "I'll show you what a crazy b[**]ch is." Appellant acknowledged that the victim put both hands up, and she further told the military judge "it was obvious that he was frightened through his reaction and his body language." The military judge asked, "So why did you do it?" Appellant replied, "To scare him in that instance." Appellant acknowledged she intended to point the gun and had no legal authorization to do so. Appellant told the military judge the gun was unloaded.

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Forbes*, 78 M.J. 279, 281 (C.A.A.F. 2019) (quoting *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)). In reviewing the providence of a plea, a military judge abuses his discretion when there is "a substantial basis in law or fact for questioning the plea." *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). The military judge's legal conclusion about the providence of the plea is reviewed de novo. *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005). An appellant bears the burden of establishing that the record shows "a substantial basis in law or fact to question the plea." *United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F. 2015).

We turn then to the military judge's acceptance of Appellant's pleas. Appellant's providence inquiry established the two elements of simple assault with an unloaded firearm. We conclude that the military judge did not abuse his discretion in accepting Appellant's plea to the charged offense and had no basis for rejecting it. We reach this conclusion notwithstanding the military judge's error in believing that Appellant was charged with the greater offense of aggravated assault with a dangerous weapon. Although the military judge erred by conducting a colloquy on elements of aggravated assault with a dangerous weapon, Appellant has not met her burden to show a substantial basis to question her pleas to Charge III and its Specification.[9] *Phillips*, 74 M.J. at 21–22.

**B. Sentencing**

Appellant correctly points out that it was the military judge who first labeled Charge III as an aggravated assault with a dangerous weapon, and no one corrected him. During sentencing proceedings, the sentencing authority must consider, among other things, "the nature and circumstances of the offense." R.C.M. 1002(f)(1). It may seem as though that happened here, except

---

[9] The STR and EoJ correctly record the offense code to be reported to the Defense Incident-Based Reporting System (DIBRS) as "128-A" for simple assault. A DIBRS code is neither a finding nor part of a sentence, *United States v. Lepore*, 81 M.J. 759, 762–63 (A.F. Ct. Crim. App. 2021) (en banc), but is instructive on the issue at hand.

the military judge believed, erroneously, that he was sentencing Appellant for aggravated assault with a dangerous weapon.

The military judge compounded this error when he found both elements of the greater offense were satisfied by Appellant's responses during the providence inquiry. Yet, neither element was shown by that inquiry. Appellant's responses established that she intended only to frighten the victim, and that her unloaded handgun could have been dangerous if the facts were different:

> Q [MJ]: Okay so from what you saw with [the victim] it caused him to have apprehension as well?
>
> A [Appellant]: Yes, Your Honor. Because he didn't know that the gun was unloaded.
>
> Q: Right. *So why did you do it?*
>
> A: *To scare him in that instance.*
>
> Q: . . . [T]he reason I'm asking is because *you have to intend to do the bodily harm.* So if he has a reasonable apprehension that you're about to do something to him even if you really know you can't do it, in other words you can't shoot him, *but you intended to scare him, to me that shows that you intended to do bodily harm to him by scaring the crap out of him.* Just to use plain language. Is that, is that accurate? Or inaccurate?
>
> A: Yes, Your Honor.[10]
>
> Q: Okay, okay. And you would agree that a firearm even if it's unloaded *is still a dangerous weapon? It certainly can be,* right? Do you agree?
>
> A: Yes, Your Honor.
>
> Q: I mean in other words, you *could* put a bullet in it.
>
> A: Yes, Your Honor.
>
> Q: *It, it can be* a dangerous weapon very easily, right? *I know you didn't have bullets.* What I'm . . . trying to see is if you understand that *you had a dangerous weapon that you were pointing at him.*

---

[10] We consider Appellant's single affirmative response given to questions asked in the alternative to be non-responsive. We give it no weight.

A: Yes, Your Honor.[11]

Q: Okay. *It doesn't mean that it's being used as a dangerous weapon at that particular moment*. In other words, there wasn't a round in the chamber, *the only thing you probably could've done with it at 15 feet away is throw it at him*. Right?

A: Yes, Your Honor.

(Emphasis added).

We consider Appellant's responses "as well any inferences that may reasonably be drawn" from what she said. *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007). As the military judge understood it, Appellant "intended to do bodily harm" to the victim "by scaring the crap out of him." This is not what Appellant said and the inference the military judge made in that regard was unfounded. We agree with Appellant that the providence inquiry shows she intended psychological harm, but the element of specific intent to do "[b]odily harm" for aggravated assault requires something else, specifically that Appellant intended "an offensive touching of another, however slight." *MCM*, pt. IV, ¶ 77.c.(1)(a). On this record, it was unreasonable for the military judge to conclude that Appellant specifically intended bodily harm.

We likewise agree with Appellant's point that, on the question whether the handgun she used was a dangerous weapon, the military judge "grounded his questions in hypothetical possibilities, even remarking that she could load a bullet in a different scenario but, given the facts as they were, all she could have done is throw[n] [the handgun] at [the victim] from [some] distance." Appellant's plea of guilty established that she "intentionally point[ed] an unloaded firearm," and not that the handgun was a dangerous weapon because she *could* have thrown it at the victim or chambered a round.

In line with the providence inquiry, we would have to presume that the military judge proceeded to the sentencing phase of court-martial with the unfounded belief that Appellant intended bodily harm to the victim and that she used a dangerous weapon in the commission of the charged offense. In doing so, the military judge undermined a fundamental right of Appellant to due consideration of the nature and circumstances of the lesser offense that the Government charged. Even during presentencing proceedings, the military judge operated under the same misapprehension that clouded the case since the plea inquiry two days earlier. In that regard, trial counsel argued without

---

[11] Appellant's affirmative response was ambiguous. She may have agreed that the handgun could have been a dangerous weapon or that it was dangerous. Alternatively, her response might have been a polite acknowledgement that she understood the military judge had a purpose in asking the question.

objection for a lengthy sentence because "the accused committed an *aggravated assault* with a firearm." (Emphasis added).

Turning to the question of prejudice, we believe the correct standard is to ask whether the military judge's error "substantially influence[d] Appellant's adjudged sentence." *United States v. Edwards*, 82 M.J. 239, 247 (C.A.A.F. 2022). We believe that it did, and we agree with Appellant that the military judge's errors permeated sentencing. At the outset, we note that the military judge imposed no confinement for the offense of negligent dereliction of duty and minimal confinement for Charge III and its Specification. The Government notes Appellant received a sentence of just seven days confinement and a bad conduct discharge. The Government argues that Appellant's punitive exposure was unchanged because the maximum punishment for both offenses was the same without regard to forum[12] and because the special court-martial forum limited her punitive exposure to one year of confinement and a bad-conduct discharge.

We are not persuaded by these arguments. The military judge imposed a sentenced for an offense more serious than Appellant was charged with committing. He erred by evaluating Appellant's conduct in reference to the nature and circumstances of an offense more aggravating than was shown by her providence inquiry. R.C.M. 1002(f)(1). He sentenced Appellant for matters in aggravation that were not shown by that inquiry or the evidence. Under these circumstances, we are compelled to conclude that these errors substantially influenced the sentence he determined was appropriate.[13]

We have broad discretion to reassess a sentence to cure error. *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). Our discretion weighs against reassessment when appellate review results in a dramatic change to the penalty landscape, the gravamen of the criminal conduct is changed, or aggravating circumstances are found inadmissible or irrelevant. *Id.* We may reassess a sentence only if we are able to reliably determine that, absent the error, the sentence would have been "at least of a certain magnitude." *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citation omitted). Applying the *Winckelmann* factors, we are not convinced that we can reliably make such a

---

[12] The maximum authorized punishment is the same. *Compare MCM*, pt. IV, para. 77.d.(1)(b) (simple assault with an unloaded firearm) *with MCM*, pt. IV, para. 77.d.(3)(a)(iii) (aggravated assault with a dangerous weapon when not committed under circumstances specified in subparagraphs (i) and (ii)).

[13] To be clear, Appellant's sentence is incorrect in law and fact. Article 66(d)(1), 10 U.S.C. § 866(d)(1). Our decision today does not reach the question whether, on this record, a sentence that includes seven days' confinement and a punitive discharge should not be approved because it may be inappropriately severe.

determination. *Winckelmann*, 73 M.J. at 15–16. In view of the military judge's fundamental misapprehension of law and finding matters in aggravation unsupported by the record, "the only fair course of action is to have [Appellant] resentenced at the trial level." *Harris*, 53 M.J. at 88 (quoting *United States v. Peoples*, 29 M.J. 426, 429 (C.M.A. 1990)).

## III. Conclusion

The findings are correct in law and fact. Accordingly, the findings as entered are **AFFIRMED**. The sentence is **SET ASIDE** for error materially prejudicial to a substantial right of Appellant. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). The record is returned to The Judge Advocate General for further proceedings consistent with this opinion. A rehearing is authorized. Article 66(f)(2), UCMJ, 10 U.S.C. § 866(f)(2). Thereafter, the record will be returned to the court to complete appellate review under Article 66(d), UCMJ.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court