**UNITED STATES**

v.

**Christopher J. MELBOURNE,**
**Seaman (E–3), U.S. Navy.**

**NMCM 200100560.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 18 Sept. 2000.

Decided 8 May 2003.

Maj Eric P. Gifford, USMC, Appellate Defense Counsel.

Lt Ross W. Weiland, JAGC, USNR, Appellate Government Counsel.

Before FINNIE, Senior Judge, CARVER and BRYANT, Appellate Military Judges.

BRYANT, Judge:

On 18 September 2000, a military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of violating a lawful general order, reckless operation of a motor vehicle resulting in death, drunken operation of a motor vehicle resulting in death, and negligent homicide, in violation of Articles 92, 111, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 911, and 934. Contrary to his pleas, the appellant was also convicted of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907. The appellant was sentenced to 20 months confinement, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged. Pursuant to the terms of the pretrial agreement, all confinement in excess of 18 months was suspended for a period of 12 months from the date the sentence was adjudged.

After carefully considering the record of trial, the appellant's assignments of error,[1]

---

1. I. THE EVIDENCE IS FACTUALLY AND LEGALLY INSUFFICIENT TO ESTABLISH APPELLANT'S GUILT TO CHARGE II, FALSE OFFICIAL STATEMENT, IN THAT APPELLANT'S STATEMENT WAS NOT "OFFICIAL," AS IT WAS MADE DURING AN INTERROGATION BY [Naval Criminal Investigative Service] NCIS SPECIAL AGENTS AND, AT THE TIME OF HIS INTERROGATION, APPELLANT WAS CONSIDERED A SUSPECT UNDER THE UCMJ.

II. SPECIFICATIONS 1 AND 2, CHARGE III, ALLEGING OFFENSES OF DRUNKEN DRIVING CAUSING DEATH, RECKLESS DRIVING CAUSING DEATH, AND CHARGE V, ALLEGING NEGLIGENT

and the Government's response, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

This case involves the tragic death of 19–year–old Seaman Willie McDowell, USN, who drowned in Willoughby Bay adjoining the Norfolk Naval Base in Virginia. Seaman McDowell's untimely demise was brought about by the negligent, reckless, and certainly foolhardy conduct of the appellant.

On 14 August 1999, the appellant was attached to the USS CAPE ST. GEORGE (CG 71), which was then pier-side at her homeport of Norfolk Naval Base. Prosecution Exhibit 1. At the time, the appellant was a 20–year–old Sailor who was well aware of a long-standing general order prohibiting service members under the age of 21 from consuming alcoholic beverages. Early that day, the appellant and two friends pooled their funds in the hope of purchasing alcohol. The money was provided to a fourth individual who was of sufficient age to legally buy the prohibited beverages. As the day progressed, the appellant consumed either four or five mixed drinks containing rum.

At approximately 2045, the accused borrowed the vehicle of another friend. He then drove to a barracks area onboard the Naval Base where, in the company of several friends, he consumed three beers. After making plans to attend a party later that evening, the appellant drove to another barracks where he picked up the victim, Seaman McDowell.

With Seaman McDowell in the front seat, the intoxicated appellant drove to nearby Chambers Airfield. The appellant guided the vehicle into a restricted area designated as Runway 27R. Neither the airfield, nor Runway 27R was in use on that evening and, thus, the airfield itself, as well the adjoining Willoughby Bay, were not illuminated. The surface of the runway was wet due to intermittent rain that evening.

Runway 27R runs east to west with a grassy area marking its inland western boundary. The eastern end of the runway is marked by a less than 50–foot–wide strip of grass followed by a ground-level seawall with a breakwater of boulders extending between 15 and 20 feet into Willoughby Bay itself.

After entering the restricted area, the appellant drove the vehicle along Runway 27R in a westerly direction. During this traverse of the runway, the appellant reached speeds of between 70 and 100 miles-per-hour before applying the brakes and making a U-turn in the western grass border. After lining up the vehicle for a second pass, the appellant again reached speeds in excess of 60 miles-per-hour as he barreled headlong in an easterly direction toward the darkened waters of Willoughby Bay. According to the testimony of a NCIS Special Agent who handled the crime-scene investigation, the vehicle passed directly over the eastern border grass, the edge of the seawall, and cleared the boulders of the breakwater without any sign of braking before plunging into the bay.[2] The vehi-

HOMICIDE, ARE MULTIPLICIOUS AND CONSTITUTE AN UNREASONABLE MULTIPLICATION OF CHARGES.

III. TRIAL COUNSEL'S IMPROPER ARGUMENT DURING SENTENCING WHERE HE ASKED THE MILITARY JUDGE TO IMAGINE HIMSELF IN THE POSITION OF THE DECEASED VICTIM DURING THE LAST FEW MINUTES OF HIS LIFE WHILE HE WAS DROWNING CONSTITUTED PLAIN ERROR.

IV. A SENTENCE THAT INCLUDES CONFINEMENT FOR 20 MONTHS, REDUCTION TO PAY GRADE E–1, FORFEITURE OF ALL PAY AND ALLOWANCES, AND AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE CONSIDERING THE FACTS AND CIRCUMSTANCES OF APPELLANT'S CASE.

Supp A SENTENCE THAT INCLUDES CONFINEMENT FOR 20 MONTHS, REDUCTION TO PAY GRADE E–1, FORFEITURE OF ALL PAY AND ALLOWANCES, AND AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE WHEN COMPARED TO THE SENTENCE AWARDED TO A MARINE ACCUSED IN A CASE INVOLVING SIMILAR FACTS AND CIRCUMSTANCES.

**2.** Special Agent Phillip Hill was a Government witness and testified during pre-sentencing. Record at 113–20.

cle was found approximately 90 feet from the seawall completely submerged in the water.

Once in the water, the vehicle immediately began to sink. The appellant and Seaman McDowell sought temporary refuge on the hood of the car. After approximately two minutes, the appellant told Seaman McDowell that they would have to abandon the vehicle and swim for shore. It was at this point that Seaman McDowell let it be known that he could not swim. The appellant saw Seaman McDowell make a futile effort to swim to shore, and tried to help Seaman McDowell. The panic-stricken Sailor pulled the appellant beneath the surface several times, forcing the appellant to break off his rescue efforts. Unable to stay afloat, Seaman McDowell succumbed and drowned.

Seaman McDowell's body was found at the bottom of the bay 25–30 feet from the vehicle, between the vehicle and the shoreline. It was determined that the cause of death was drowning; at the time of his death Seaman McDowell was not under the influence of any alcohol or drugs. The appellant reached the shore uninjured. During the providence inquiry, the appellant admitted that he was the proximate cause of Seaman McDowell's death.

A pathologist who testified for the Government during the pre-sentencing phase of the court-marital explained that once Seaman McDowell became submerged, it took somewhere between one and two minutes for his instinctive need to breath to overtake his conscious fear of inhaling water. The presence of water in Seaman McDowell's lungs would have caused a coughing response, which in turn led to the intake of additional water. After struggling for approximately two minutes with water-filled lungs, Seaman McDowell most likely lost consciousness. Approximately two minutes later, Seaman McDowell was dead.

Immediately after the accident, NCIS agents interviewed the appellant as they conducted an on-site investigation of the crash. The appellant told the investigators that Seaman McDowell had been driving the vehicle when it plunged into the bay and that he had been a passenger. This account, which the initial investigating agent had no reason to doubt, was passed along to Special Agent (SA) David Johnson—who was eventually assigned to conduct a complete investigation of the circumstances surrounding the death of Seaman McDowell. Record at 74.

On 17 August 1999, SA Johnson met with the appellant to conduct a witness interview. At the conclusion of the interview, SA Johnson prepared a statement for the appellant's signature based on the answers the appellant provided. In pertinent part, the appellant's 17 August 1999 statement to SA Johnson reads:

> I revved the engine and drove the car very fast until I hit some grass.... McDowell said he thought I was drunk and shouldn't drive so we switched seats and he got into the driver[']s seat. He also wanted to drive the car really fast and so he drove back the other way down the runway. I did not look at the speedometer but I knew we were driving really fast. I soon saw grass and felt the car go down and then up and then down again. I felt the car hit something and the windows became cloudy.... Water began to come into the car and we both crawled out the windows onto the roof of the car. The windows were open already and I crawled out the passenger side while McDowell crawled out the driver's side.

Prosecution Exhibit 10 at 2.

SA Johnson testified that in December 1999, information developed suggesting that the appellant might be a suspect. In a subsequent interview, the appellant confessed that he had been driving the vehicle when Seaman McDowell died.

### Sufficiency of the Evidence

In his first assignment of error, the appellant alleges that the evidence presented was insufficient to support a conviction for making a false official statement (Charge II, Specification). As noted by the military judge, the appellant entered into a factual stipulation indicating that he had made a statement to SA Johnson on 17 August 1999, that this particular statement was indeed false, and that he knowingly made the false statement with the intent to deceive the NCIS agent. Record at 61; Prosecution Ex-

hibit 1 at ¶¶ 25–27. Consequently, the only contested issue at trial was whether the appellant's 17 August statement amounted to an official statement within the meaning of Article 107, UCMJ. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 31(b)(1).

By statute, we are charged with determining both the legal and factually sufficiency of the evidence presented at trial. Art. 66, UCMJ; *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324. In contrast, the factual sufficiency test is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the [reviewing court] are themselves convinced of the accused's guilt beyond a reasonable doubt." *Id.* at 325. In making these determinations, we are mindful that reasonable doubt does not mean the evidence must be free of conflict. *United States v. Reed*, 51 M.J. 559, 562 (N.M.Ct. Crim.App.1999), *aff'd*, 54 M.J. 37 (2000).

█ In support of his argument that his statement to SA Johnson was not an official communication, the appellant correctly notes that the Manual, in discussing Article 107, UCMJ, provides that:

[a] statement made by an accused or suspect during an interrogation is not an official statement within the meaning of the article if that person did not have an independent duty or obligation to speak.

MCM, Part IV, ¶ 31(c)(6)(a).[3]

However, in *United States v. Czeschin*, 56 M.J. 346 (2002), our superior Court made it clear that false statements made to investigators may be prosecuted as false official statements. With respect to the language cited by the appellant, our superior Court has previously indicated that the passage the appellant referenced:

[C]ould be seen as nothing more than an expansive description of *dicta* from this Court's decisions that predate the 1984 revision of the Manual, with no intent to limit prosecutions. Second, it could be viewed as protecting an accused against overcharging. Third, it could be viewed as guidance for the conduct of investigations.

*United States v. Solis*, 46 M.J. 31, 35 (1997). We specifically held that this language from the Manual "is no longer an accurate statement of law, at least insofar as it would apply to statements made to law enforcement agents conducting official investigations." *United States v. Morris*, 47 M.J. 695, 701 (N.M.Ct.Crim.App.1997), *aff'd*, 52 M.J. 193 (1999). In any event, our superior Court views this passage as "not establish[ing] a right that may be asserted by an accused who is charged with violating Article 107." *Czeschin*, 56 M.J. at 349. Accordingly, the legal basis upon which the appellant puts forth his sufficiency argument is unsound.

Viewing the evidence in the light most favorable to the Government, the record contains more than sufficient evidence upon which a reasonable factfinder could have found all of the elements of making a false official statement beyond a reasonable doubt. In addition, after weighing the evidence outlined above, and making the necessary allowances, we are convinced of the accused's guilt beyond a reasonable doubt.

Accordingly, the evidence presented at trial was both legally and factually sufficient, and the appellant's first assignment of error is denied.

## Multiplicity and Unreasonable Multiplication of Charges

The appellant asks this Court to dismiss his conviction for reckless driving resulting in a death (Charge III, Specification 1) as being multiplicious with his convictions for drunken driving resulting in death (Charge III, Specification 2) and negligent homicide (Charge V, Specification). Appellant's Brief of 15 Aug 2001 at 10–11. The appellant further argues that the Government's deci-

---

3. We note that the language the appellant relies upon has been removed from the Manual. *See*

MCM, Part IV, ¶ 31c (2002 ed.).

sion to charge him "with two specifications alleging a violation of Article 111, UCMJ, as well as a violation of Article 134, UCMJ, 10 U.S.C. § 934, negligent homicide, constitutes an unreasonable multiplication of charges." *Id.* at 11. He asks this Court to dismiss the reckless driving conviction.

During pre-sentencing, and in response to a query from the military judge, trial defense counsel argued that "the drunk driving and the reckless driving ... specifications are multiplicious for sentencing purposes in that they ... [are] an unfair piling on of what essentially is one action." Record at 109. He thereafter added, "For merits we understand that the [*United States v.*] *Teters*[, 37 M.J. 370 (C.M.A.1993), *cert. denied*, 510 U.S. 1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994)] test exempts that." *Id.* Trial defense counsel did not assert, as the appellant does now, that drunk driving and the reckless driving convictions are multiplicious with the conviction for negligent homicide. After hearing argument, the military judge, citing *United States v. Quiroz*, 53 M.J. 600 (N.M.Ct.Crim. App.2000)(en banc)(hereinafter *Quiroz II*),[4] stated that:

> [I]n regard to the two specifications under Charge III, I believe they are separately punishable, but for purposes of sentencing the terminal element of both those offenses, specifically that the reckless conduct or the drunken conduct resulted in injury [*i.e.*, death], the court is going to consider the terminal element of both those offenses to be essentially the same for purposes of punishment as Charge V and its sole Specification, alleging negligent homicide.

Record at 110. Stated differently, the military judge, in reaching a sentence, considered the operative injury/death element of all three offenses as multiplicious for sentencing.

Turning first to the appellant's assertion of error based upon failure to find the noted convictions multiplicious for findings, ordinarily the failure to raise a timely motion will result in a waiver of any multiplicity claim. *United States v. Heryford*, 52 M.J. 265, 266 (2000); *United States v. Lloyd*, 46 M.J. 19, 23 (1997). The "[a]ppellant has the burden of persuading us that there was plain error." *United States v. Barner*, 56 M.J. 131, 137 (2001). Waiver may be overcome, and plain error established, however, by a showing that the offenses are "facially duplicative." *Heryford*, 52 M.J. at 266; *Lloyd*, 46 M.J. at 23. In deciding whether the charged offenses are facially duplicative, we review the "language of the specifications and 'facts apparent on the face of the record' " to determine if the specifications are factually the same. *Heryford*, 52 M.J. at 266 (quoting *Lloyd*, 46 M.J. at 24).

Under the circumstances of this case, we find that the appellant has failed to preserve any multiplicity issue for appeal. *Barner*, 56 M.J. at 137; *United States v. Chambers*, 54 M.J. 834, 835 n. 1 (N.M.Ct.Crim.App. 2001). Operating a vehicle while drunk is not synonymous with driving the same vehicle in a reckless manner. *See* MCM, Part IV, ¶ 35(c)(10).[5] Stated another way, the evidence may reveal that an accused was in fact drunk without proving that the accused operated the vehicle in a reckless or negligent manner. Conversely, the evidence can show that an accused drove in a reckless and wanton manner without establishing drunkenness. The same can be said in a case such as this where the appellant stands convicted of both reckless and drunken driving resulting in death, as well as negligent homicide based on his negligent operation of the vehicle.

The appellant has not established "on the basis of the existing record that the specifica-

---

4. Subsequent history: *remanded by United States v. Quiroz*, 55 M.J. 334 (2001)(hereinafter *Quiroz III*), *modified and aff'd on remand*, 57 M.J. 583 (N.M.Ct.Crim.App.2002)(en banc)(hereinafter *Quiroz IV*), *aff'd*, 58 M.J. 183 (C.A.A.F.2003)(summary disposition). The initial case, *United States v. Quiroz*, 52 M.J. 510 (N.M.Ct.Crim.App.1999)(*i.e., Quiroz I*), is not relevant to the case at bar.

5. "While the same course of conduct may constitute violations of both subsections (1) and (2) of the Article, *e.g.*, both drunken and reckless operation or physical control, this article proscribes the conduct described in both subsections as separate offenses, which may be charged separately."

tions punished the same factual conduct" and, as such, were lesser included offenses of each other. *United States v. Harwood*, 46 M.J. 26, 28 (1997). The fact that the appellant raced along a wet runway at excessive speeds supports the allegation of reckless driving, but does nothing to establish that he was drunk. Evidence that the appellant consumed as many as eight alcoholic beverages before driving supports the allegation of drunkenness, but is unnecessary to prove either recklessness or negligence. At the same time, the allegation that the appellant operated the vehicle in a negligent manner is satisfied by evidence showing he entered a restricted area and drove along a darkened runway without knowing, or perhaps even caring, that the airstrip ended abruptly at the edge of the bay. Additional facts that clearly support his conviction for reckless driving, *i.e.*, that he was drunk and that he drove up and down the runway at speeds approaching 100 miles an hour, are unnecessary to prove mere negligence in the death of Seaman McDowell.

Our superior Court directs us to address multiplicity for findings issues by asking whether Congress intended to permit multiple convictions under one or more statutes at a single trial where those statutes were violated by a single act. *See Teters*, 37 M.J. at 375–78; *United States v. Neblock*, 45 M.J. 191, 200 (1996); *see also Sanabria v. United States*, 437 U.S. 54, 70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). Looking to the Manual for Courts–Martial, we find that drunk driving resulting in death, reckless driving resulting in death, and negligent homicide are not listed as lesser included offenses of one another. MCM, Part IV, ¶¶ 35(d) and 85(d). Furthermore, although all offenses share a common element, the death of Seaman McDowell, we also find that each offense required proof of an element the others did not. MCM, Part IV, ¶¶ 35(b). and 85(b). *See Teters*, 37 M.J. at 375–78. "Although injury to a victim can be included as an aggravating element of drunk driving [and

reckless driving], as it was in this case, neither a fatality nor an injury is required to support a drunk driving [or reckless driving] conviction." *Chambers*, 54 M.J. at 835.

Accordingly, these offenses are not facially duplicative and, therefore, not multiplicious for findings.[6] The appellant has not persuaded us that there was plain error. *Barner*, 56 M.J. at 137. The "issue was neither raised nor litigated at trial and is therefore deemed waived." *United States v. Denton*, 50 M.J. 189 (1998)(summary disposition.)

Assuming *arguendo* the referenced convictions were multiplicious for findings, and, thus, we are required to reassess the appellant's sentence, *see United States v. Riley*, 55 M.J. 185, 190 (2001), we would find that his driving in such a manner as to cause Seaman McDowell's death, coupled with his willingness to flout military authority by violating a general order, entering a restricted area without authorization, and making a false official statement to an NCIS investigator, would have garnered a sentence of a certain magnitude. *United States v. Sales*, 22 M.J. 305, 307 (C.M.A.1986). We would further find that the aforementioned criminal acts warrant a degree of punishment equal to, but certainly not less than, the sentence as approved below. *See Id.* at 308. Moreover, the military judge's decision to consider the injury/death element of each offense multiplicious for sentencing allays any concern that the appellant was prejudiced. Therefore, even if we considered the offenses multiplicious, the appellant would not be entitled to sentencing relief.

The appellant next argues that he is entitled to relief because the offenses discussed above constitute an unreasonable multiplication of charges. The persuasiveness of his argument, however, is *significantly* diminished by the military judge's decision to consider the operative common factual element of all three offenses, *i.e.*, the death of Seaman McDowell, to be multiplicious for sentencing. *See Quiroz III*, 55 M.J. at 339 ("[A] motion to

---

6. We note that the promulgating order, in summarizing the three referenced convictions, specifically listed for each that the appellant's actions resulted in the death of "Seamen McDowell." General Court–Martial Order 07–01 of 1 Mar

2001 at 1–2. This obviates any concern that those who may subsequently review the order might incorrectly assume the appellant's actions caused the death of more than one individual.

treat offenses as 'multiplicious for sentencing' remains a valid basis for relief under the Manual.").

■ We, nevertheless, have considered the five, non-exclusive, factors discussed in *Quiroz IV*; specifically, (1) did the appellant object at trial; (2) is each specification aimed at distinctly separate criminal acts; (3) does the number of specifications misrepresent or exaggerate the appellant's criminality; (4) does the number of specifications unreasonably increase the appellant's punitive exposure; and (5) is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges? *Quiroz IV*, 57 M.J. at 585–86.

■ As previously noted, the appellant did not, as he does now, move at trial to dismiss the reckless driving offense as being an unreasonable multiplication of charges. He was, however, given relief by the military judge's decision to hold the aggravating element of reckless driving, drunk driving, and negligent homicide were multiplicious for sentencing.

As to the second and third factors, we find that each specification was aimed at distinctly separate criminal acts. As discussed above, the drunk driving and reckless driving charges were aimed at different forms of proscribed behavior. The same can be said with respect to negligent homicide. Additionally, the number of specifications did not misrepresent or exaggerate his criminality. He chose to engage in a course of conduct that violated several punitive articles.

Looking to the fourth and fifth factors, the number of specifications did not unreasonably increase the appellant's punitive exposure. Moreover, the appellant also benefited from the favorable terms of his pretrial agreement. Finally, the record is devoid of any evidence of prosecutorial overreaching or abuse in the drafting of the charges.

We are mindful of our decision in *Chambers*, 54 M.J. at 836, where we found a "partial unreasonable multiplication of charges" in a case involving convictions of drunk driving resulting in death and negligent homicide. The *Chambers* decision was handed down antecedent to our decision in *Quiroz IV*

and, thus, does not apply the more developed analysis called for in the latter decision. Additionally, the military judge in *Chambers* did not, as in this appellant's case, state that he considered any aspect of the charged offenses multiplicious for sentencing. Therefore, we do not see the *Chambers* decision as controlling with respect to this appellant's claim of unreasonable multiplication of charges.

Accordingly, the appellant's unreasonable multiplication of charges error is denied.

### Improper Sentencing Argument

In a summary assignment of error, the appellant contends that the trial counsel delivered an improper sentencing argument. This contention is premised on the following statement made by the trial counsel in argument on sentencing:

> Imagine what those minutes, the last minutes of [Seaman McDowell's] life, were like, gasping for air, struggling, choking, feeling the pressure in his chest building when he drowned, knowing—knowing during that one to two minutes that he was drowning, and he was going to die, and he'd never see his family again.

Record at 174. The appellant complains that, by this argument, the trial counsel was asking the military judge to imagine himself in the position of Seaman McDowell during the last few moments of his life and this constituted plain error. Appellant's Brief of 15 Aug 2001 at 13.

■ Inasmuch as the appellant failed to make any objection at trial, in the absence of plain error he is entitled to no relief. *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992); RULE FOR COURTS-MARTIAL 1001(g), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). "Plain error" as a legal term requires that an error, in fact, exist; that it be plain or obvious; and that it materially prejudices the substantial rights of the appellant. *United States v. Robbins*, 52 M.J. 455, 457 (2000). When plain error involves a judge alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly, and is presumed capable of filtering out inadmissible evidence and inappropriate argu-

ments. *Id.* As such, "plain error before a military judge sitting alone is rare indeed." *United States v. Raya,* 45 M.J. 251, 253 (1996).

In *United States v. Baer,* 53 M.J. 235, 237 (2000), our superior Court considered a strikingly similar case where the trial counsel asked the members during his sentencing argument to "imagine" the victim entering the house where she was savagely beaten by Baer and his cohorts. Moments later, the members were invited to "imagine the pain and the agony. Imagine the helplessness and the terror." *Id.* The *Baer* Court began with a reminder that when arguing for what is perceived to be an appropriate sentence, the trial counsel is at liberty to strike hard, but not foul blows. *Edwards,* 35 M.J. at 351; *see also Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Among the foulest of blows is an argument aimed at inflaming the passions or prejudices of the court members. *United States v. Clifton,* 15 M.J. 26, 30 (C.M.A.1983). One means of inciting such prejudices is to encourage the members or the military judge to place themselves in the shoes of the victim.

■ On the other hand, the trial counsel is permitted to ask the sentencing authority to imagine the victim's fear, pain, terror, and anguish as victim impact evidence. *Baer,* 53 M.J. at 238 (citing *United States v. Holt,* 33 M.J. 400, 408–09 (C.M.A.1991)). From a logical standpoint, inviting the sentencing authority to consider the fear and pain of the victim is conceptually different from asking him to stand in the victim's place. *See United States v. Edmonds,* 36 M.J. 791, 793 (A.C.M.R.1993).

■ In the case at bar, there is no doubt that Seaman McDowell experienced a nearly unimaginable level of fear as he made a vain attempt to reach the safety of the shoreline. Based on the testimony of the Government's expert witness, there is also no doubt that Seaman McDowell suffered as he struggled for two minutes with water-filled lungs before his death. Taking the trial counsel's entire sentencing argument in context, we find no indication that the direction, tone, and theme of the argument were calculated to inflame the military judge's passions or

possible prejudices. *Baer,* 53 M.J. at 238. Instead, trial counsel was describing the tragic circumstances of Seaman McDowell's demise. Such circumstances were appropriate considerations bearing upon the sentence to be awarded.

With respect to the trial counsel's sentencing argument, we find no error, plain or otherwise. Moreover, had we actually found a plain or obvious error, we cannot imagine how the trial counsel's argument could have biased the military judge against the appellant. In short, even if this argument amounted to an error, we find that the appellant suffered no prejudice.

**Sentence Appropriateness and Disparity**

■ In another summary assignment of error, the appellant asserts that his sentence is inappropriately severe. By way of a supplemental assignment of error, the appellant argues that his sentence is too severe, especially in comparison to the sentence awarded to a U.S. Marine convicted in an unrelated case involving allegedly similar facts and circumstances. We disagree and provide no relief.

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988). This requires " 'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.' " *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982)(quoting *United States v. Mamaluy,* 10 C.M.A. 102, 106–07, 27 C.M.R. 176, 180–81, 1959 WL 3587 (1959)).

The offenses committed by the appellant were extremely serious and deserving of serious punishment. He flouted military authority by ignoring a general order proscribing underage drinking. After becoming intoxicated, the appellant compounded his criminal conduct by driving a vehicle into a restricted area. In this dangerous state, the appellant recklessly and negligently drove the vehicle, apparently without braking, into Willoughby Bay, killing his passenger. Compounding his crimes, the appellant lied

to military investigators, which led them astray.

We have carefully considered the mitigating factors raised by the appellant during trial and during the post-trial review process. We do not believe the sentence, as adjudged and approved below, was inappropriately severe. Granting sentence relief at this point would be to engage in clemency, a prerogative reserved for the convening authority. *Healy,* 26 M.J. at 395–96.

Our authority to review a court-martial sentence for appropriateness includes considerations of uniformity and even-handedness of sentencing decisions. *United States v. Sothen,* 54 M.J. 294, 296 (2001)(citing *United States v. Lacy,* 50 M.J. 286, 287–88 (1999)). "[A]n appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity." *Lacy,* 50 M.J. at 288.

In this context, the phrase "closely related," does not restrict the scope of our review to cases rising out of a common scheme. To qualify as closely related, the cases in question need to be either "similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R.1994); *see also United States v. Wacha,* 55 M.J. 266, 267–68 (2001)(noting that "[n]othing in *Lacy* or is progeny suggests any limitation on a Court of Criminal Appeals' discretion to consider and compare other courts-martial sentences when that court is reviewing a case for sentence appropriateness and relative uniformity").

In this case, the appellant points to the general court-martial of Lance Corporal Perkins, U.S. Marine Corps, who was convicted of reckless driving causing the death of a passenger. Lance Corporal Perkins was convicted of one specification of violating Article 111, UCMJ, in that he "physically controlled a vehicle in a reckless manner by driving the vehicle at a high rate of speed into and around a bend in the road and did

thereby cause such vehicle to leave the roadway, strike a dirt mound and roll over, thereby causing the death of a servicemember." Appellant's Motion to Attach Documents of 4 Dec 2001 at 3. He was sentenced to reduction to pay grade E–2, forfeiture of $500.00 pay per month for three months, and confinement for 89 days. *Id.*

We do not find these two cases to be "closely related." Lance Corporal Perkins was convicted of neither drunk driving resulting in a death nor negligent homicide. Furthermore, he was not convicted of making a false official statement regarding his accident to military investigators. Under these circumstances we cannot say these two cases are similar in nature or seriousness. Assuming for the moment these cases are closely related, we are satisfied that the disparity between the sentences awarded is justified by a rational basis. The appellant has failed to carry his burden and, thus, his supplemental assignment of error is denied.

Accordingly, we affirm the findings and sentence as approved on review below.

Senior Judge FINNIE and Judge CARVER concur.