*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Victor M. GREEN**
Master-at-Arms Second Class (E-5), U.S. Navy
*Appellant*

**No. 202100032**

Decided: 29 December 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Arthur L. Gaston III (arraignment and motions)
Derek D. Butler (trial)

Sentence adjudged 9 September 2020 by a general court-martial convened at Naval Support Activity Naples, Italy, and Naval Air Station Jacksonville, Florida, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to E-3, confinement for 15 months, and a bad-conduct discharge.

For Appellant:
*Captain Jasper W. Casey, USMC*

For Appellee:
*Lieutenant R. Blake Royall, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

_____

Judge DEERWESTER delivered the opinion of the Court, in which Chief Judge MONAHAN and Senior Judge STEPHENS joined.

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

DEERWESTER, Judge:

Pursuant to his pleas, Appellant was convicted of three specifications of violating a lawful general order in violation of Article 92, Uniform Code of Military Justice [UCMJ]; one specification of conspiracy to violate a lawful general order in violation of Article 81, UCMJ; one specification of negligent damage of military property, in violation of Article 108, UCMJ; and one specification of drunken operation of a vehicle in violation of Article 111, UCMJ. Appellant raises two assignments of error [AOE]: (1) the military judge abused his discretion in admitting and considering evidence of the decedent's injuries and death in an accident involving Appellant; and (2) the sentence to confinement was inappropriately severe.

We find no prejudice and affirm.

## I. BACKGROUND

One evening while Appellant was stationed as a military working dog handler at Camp Lemonier, Djibouti, he was the driver of a motor vehicle that collided with a motor scooter ridden by a Djiboutian citizen, Mr. "Golf,"[1] who died as a result of the accident. Earlier in the evening, prior to the accident, Appellant left base in violation of a base instruction which prohibited personnel from leaving base unless authorized for official business. Because Appellant was attached to the security department as a military dog handler, he was aware of a code word, which informed the gate guards he was authorized to leave base for an emergent mission. Appellant and his passengers used this code word to leave base, and then went to a local bar

_____

[1] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

where they continued to drink alcohol. Appellant's blood alcohol level at the time of the accident was 0.14 grams per deciliter.

After the litigation of a number of motions, Appellant entered into a pretrial agreement. He agreed to plead guilty to orders violations, conspiracy to commit an orders violation, damage of military property, and drunken operation of a vehicle. In exchange, the convening authority agreed to withdraw an involuntary manslaughter charge, and agreed to limit confinement to a maximum of three years.

At his guilty plea, the Government moved to admit aggravation evidence concerning Mr. Golf's injuries and death. Specifically, the Government offered autopsy photos of Mr. Golf that graphically depicted his injuries, as well as his death certificate and the testimony of the NCIS agent who reviewed photos of the injuries to Mr. Golf. The Government also offered the testimony from one of Mr. Golf's wives and from his brother. The Government argued that this evidence was admissible under Rule for Courts-Martial [R.C.M.] 1001(b)(4) as evidence in aggravation of the offense for which Appellant was convicted. Appellant countered, arguing that the injuries and resulting death of Mr. Golf were not closely related to the charges to which Appellant pled guilty; that the Government had not established that Appellant's actions were the proximate cause of Mr. Golf's injuries and resulting death; and that the probative value of the evidence was substantially outweighed by its unfairly prejudicial impact.

After hearing argument from counsel, the military judge ruled that although the autopsy photos were not admissible, the testimony of the NCIS agent who reviewed photos of Mr. Golf's injuries was admissible. The military judge also admitted Mr. Golf's death certificate, as well as testimony from one of his wives and brother regarding the financial impact of his loss. In making these determinations, the military judge found the evidence was directly related to and resulting from the offenses to which Appellant pleaded guilty. The military judge rejected the Defense's argument that the evidence was only admissible if the offenses Appellant pleaded guilty to reflect that his actions constituted the proximate cause of Mr. Golf's injuries and death. The military judge also performed the balancing test under Military Rule of Evidence [Mil. R. Evid.] 403, and found the evidence at issue admissible.

After the military judge articulated his ruling, the trial counsel argued for five years' confinement, one year less than the maximum punishment authorized. The trial defense counsel did not give a specific recommendation on sentence, instead asking the judge to award a punishment that is consistent with the charges appellant pled guilty to, but also stated five years' confinement was much too severe. The pretrial agreement limited confinement to three years, with all other punishments as adjudged. The military

judge announced a sentence of confinement for 15 months and a bad-conduct discharge.

Appellant argues the military judge abused his discretion in admitting the testimony of Mr. Golf's wife and brother, because they were not "directly related to or resulting from" the offenses to which he pled guilty. He further argues that the military judge awarded an inappropriately severe sentence.

## II. DISCUSSION

### A. The Evidence in Aggravation was Admissible

#### 1. Standard of Review and the Law

We review the decision of a military judge to admit aggravation evidence at sentencing for an abuse of discretion.[2] "Where the military judge conducts a proper [Mil. R. Evid.] 403 balancing on the record, we will not overturn his ruling unless we find a clear abuse of discretion."[3]

The Government is entitled to offer evidence in aggravation at sentencing under R.C.M. 1001(b)(4) to show "any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."[4] Aggravation includes evidence of the impact "to any person or entity who was the victim of an offense committed by the accused . . . ."[5] This information assists the sentencing authority to place the offense "in context, including the facts and circumstances surrounding the offense."[6] The link between R.C.M. 1001(b)(4) evidence of uncharged misconduct and the crime "must be direct as the rule states, and closely related in time, type, [and] often outcome, to the convicted crime."[7] Evidence in aggravation must not be

---

[2] *United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009).

[3] *Id.* (citing and quoting *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009)).

[4] R.C.M. 1001(b)(4) (emphasis added).

[5] *Id.*

[6] *United States v. McCrary*, 2013 CCA LEXIS 387 at *12 (A.F. Ct. Crim. App. May 7, 2013) (unpublished) (citing *United States v. Mullens*, 29 M.J. 398, 400-01 (C.M.A. 1990); *United States v. Vickers*, 13 M.J. 403, 406 (C.M.A. 1982); *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001); *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006)).

[7] *United States v. Hardison*, 64 M.J. 279, 282 (C.A.A.F. 2007).

so attenuated from the offense for which an accused was convicted as to be unfairly prejudicial, irrelevant, or merely inflammatory.

Evidence offered in aggravation often highlights "same course of conduct" misconduct of an accused. It has included circumstances in which an accused was convicted of sexually abusing his children at one duty station, but stipulated to almost identical, though uncharged, misconduct at another duty station.[8] It has also included circumstances where a military recruiter was convicted of four specifications of helping potential recruits cheat on military entrance examinations, but had evidence admitted during sentencing indicating he did this "twenty or thirty" times;[9] evidence that an accused distributed a far greater amount of drugs than the amount to which he stipulated;[10] and evidence of additional thefts by an accused of property from a local sheriff's office beyond that for which the accused was convicted.[11] Evidence showing continued drug use after the drug offenses for which an accused was convicted has also been held to be proper evidence in aggravation.[12]

Evidence in aggravation can also show uncharged misconduct, which is qualitatively different from the offense for which an accused was convicted. This most often comes in the form of a victim providing a more complete picture of circumstances surrounding the misconduct to which the accused was convicted. For example, when an accused pleaded guilty to unlawful entry of a home and committed an assault consummated by a battery against a woman, she testified at sentencing about how he sexually assaulted her after entering the home, including his later admission to her that he "raped" her.[13]

For the purposes of R.C.M. 1001(b)(4), "the meaning of 'directly related' . . . is a function of both what evidence can be considered and how strong a connection that evidence must have to the offense of which the accused has been convicted."[14]

---

[8] *Mullens*, 29 M.J. at 398–401.

[9] *United States v. Ross*, 34 M.J. 183, 184 (C.M.A. 1992).

[10] *United States v. Shupe*, 36 M.J. 431, 432-36 (C.M.A. 1993).

[11] *United States v. Nourse*, 55 M.J. 229, 230–32 (C.A.A.F. 2001).

[12] *United States v. Moore*, 68 M.J. 491 (C.A.A.F. 2010).

[13] *United States v. Terlep*, 57 M.J. 344, 347 (C.A.A.F. 2002).

[14] *Hardison*, 64 M.J. at 281.

In *United States v. Glazier*, the appellant and a fellow Soldier took a joyride in an Army truck while they drank alcohol.[15] As a result, the appellant crashed the vehicle and caused such severe injuries to his passenger that he died. The government charged Glazier with involuntary manslaughter, negligent damage to a government vehicle, willfully disobeying an order of a commissioned officer, wrongful appropriation of a government vehicle, and wrongful use of marijuana. The charges of involuntary manslaughter and wrongful appropriation of a military vehicle were dismissed due to insufficient evidence. The appellant eventually pleaded guilty to the remaining charges and entered into a stipulation of fact. Part of that stipulation stated that the passenger "suffered injuries which resulted in his death later that night."[16] The appellant objected at trial, not to the truth of the stipulated fact, but to its admissibility as proper evidence in aggravation. The military judge admitted it and the Court of Military Appeals held that it was admissible under R.C.M. 1001(b)(4) because it was "directly related to the charged offenses and thus admissible."[17]

Recently in *United States v. Halfacre*, we analyzed *Glazier* while we addressed the claim of an appellant who had pleaded guilty of patronizing three prostitutes, who challenged the admission of sentencing evidence that he had also sexually assaulted each of them.[18] Specifically, we reasoned,

> In *Glazier*, the passenger was a victim of the appellant's actions, but was not a victim of the offense for which the appellant was convicted. If the passenger had merely sustained serious injuries and had lived to testify, he could surely have testified about the incident to provide the sentencing authority a more complete picture of what happened, even if he were not a bona fide victim. The type of misconduct for which Glazier was convicted—disobeying an officer, negligently damaging an Army truck, and smoking marijuana—were relatively minor, especially compared to involuntary manslaughter. And the passenger was certainly not a victim of any of the convicted offenses. But the misconduct was much more aggravated than just a typical joyride and it was proper for the sentencing au-

---

[15] *United States v. Glazier*, 26 M.J. 268 (C.M.A. 1988).

[16] *Id.* at 269.

[17] *Id.* at 271 (citing *Vickers*, 13 M.J. at 406).

[18] *United States v. Halfacre*, 80 M.J. 656, 658 (N-M. Ct. Crim. App. 2020).

thority to have the whole picture, including the facts and circumstances that were part-and-parcel of the convicted offenses, in particular the negligent damage to the government vehicle in which the passenger was riding.[19]

*2. Analysis*

Appellant attempts to distinguish *Glazier* from the facts of his own case, arguing that here, there was no stipulation that Mr. Golf's injuries and death were the result of Appellant's own actions. We disagree that the cases are significantly distinguishable. Although Appellant did not stipulate that the injuries and death resulted from his actions for which he pled guilty, the providence inquiry established that he was negligent, intoxicated, and driving on unfamiliar roads in dark conditions. While Appellant challenged that his actions were the *proximate* cause of the accident, he acknowledged that he was the *but-for* cause of the collision that killed Mr. Golf. Thus, just as was the case in *Glazier*, Mr. Golf's death was directly related to or resulting from the actions of Appellant that night, specifically, his drunken operation of a motor vehicle and damaging that vehicle when he struck Mr. Golf on his motor scooter. The aggravation evidence of the death of the decedent was proper in both cases because that evidence was inextricably interwoven with the facts and circumstances of the offenses for which each appellant was convicted, and that evidence painted a complete picture for the sentencing authority.

Here, the military judge conducted a thorough Mil. R. Evid. 403 balancing test with regard to the evidence at issue. Evidence in aggravation may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice."[20] A military judge enjoys "wide discretion" in applying this rule.[21] As long as the military judge conducts a proper balancing test and places that analysis on the record, we will not overturn the ruling unless there is a clear abuse of discretion.[22]

First, the military judge found that Mr. Golf's graphic autopsy photos were inadmissible because their prejudicial effect outweighed their probative value. However, with regard to Mr. Golf's death certificate, the NCIS agent's

---

[19] *Id.* at 661.

[20] Mil. R. Evid. 403.

[21] *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

[22] *Id.* (citing *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)).

testimony concerning Mr. Golf's his injuries, and the testimony of one of Mr. Golf's wives and brother concerning the loss of the financial support he provided his family, the military judge correctly found that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice to Appellant.

We recognize the inherent danger of evidence in aggravation that appears to be qualitatively different from the offenses for which an accused was found guilty. An accused is "not 'responsible for a never-ending chain of causes and effects.'"[23] The government should be cautious in attempting to use such evidence in aggravation. Any evidence that is so unfairly prejudicial that the unfairness substantially outweighs the probative value may be excluded.[24] This was not the case here. The military judge analyzed, in great detail, each piece of offered evidence, and did not consider that evidence "so unrelated to the offense charged as to be irrelevant."[25] Thus, he did not abuse his discretion in ruling that the death certificate, the testimony of the NCIS agent, and the testimony from Mr. Golf's family constituted proper aggravation evidence.

## B. Appellant's Sentence was Appropriate

### 1. Standard of Review and the Law

We review sentence appropriateness de novo.[26] Each "court-martial is free to impose any [legal] sentence it considers fair and just."[27] Therefore, "[t]he military system must be prepared to accept some disparity . . . provided each military accused is sentenced as an individual."[28] In execution of this highly discretionary function, we are neither required to, nor precluded from, considering sentences in other cases, except when those cases are "closely related."[29] As a general rule "sentence appropriateness should be determined

---

[23] *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995) (citing *United States v. Witt*, 21 M.J. 637, 640 n. 3 (A.C.M.R. 1985).

[24] Mil. R. Evid. 403.

[25] *United States v. Bono*, 26 M.J. 240, 242 (C.M.A. 1988) (finding ineffective assistance of counsel to not object to admission of an appellant's confession to totally unrelated misconduct from that for which he pleaded guilty).

[26] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[27] *United States v. Turner*, 34 C.M.R. 215, 217 (C.M.A. 1964).

[28] *United States v. Durant*, 55 M.J. 258, 261 (C.A.A.F. 2001) (citations omitted).

[29] *United States v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985); *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001).

without reference to or comparison with the sentences received by other offenders."[30] Notably one narrow exception to this general principle of non-comparison exists as we are "required . . . 'to engage in sentence comparison with specific cases . . . in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"[31] When requesting relief by way of this exception, an appellant's burden is twofold: the appellant must demonstrate "that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'"[32] If the appellant succeeds on both prongs, then the burden shifts to the government to "show that there is a rational basis for the disparity."[33]

For cases to be considered closely related, "the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design."[34] This threshold requirement can be satisfied by evidence of "co[-]actors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared . . . ."[35]

When assessing disparity among sentences, we look only to adjudged sentences, rather than those approved or bargained for in a pre or post-trial agreement: "[a]djudged sentences are used because there are several intervening and independent factors between trial and appeal—including discretionary grants of clemency and limits from pretrial agreements—that might properly create the disparity . . . ."[36] Accordingly, we "generally refrain from second guessing or comparing a sentence that flows from a lawful pretrial

---

[30] *Ballard*, 20 M.J. at 283 (citations omitted).

[31] *Wacha*, 55 M.J. at 267 (citations omitted).

[32] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

[33] *Id.*

[34] *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994).

[35] *Lacy*, 50 M.J. at 288–89 (finding cases were closely related "where appellant and two other Marines engaged in the same course of conduct with the same victim in each other's presence").

[36] *United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010).

agreement or a [convening authority's] lawful exercise of his authority to grant clemency to an appellant."[37]

We acknowledge disparity among sentences may arise from "differences in initial disposition rather than sentence uniformity."[38] However, "[m]ilitary commanders stationed at diverse locations throughout the world have broad discretion to decide whether a case should be disposed of through administrative, nonjudicial, or court-martial channels."[39] Therefore, if "cases are closely related, yet result in widely disparate disposition, we must instead decide whether the disparity in disposition results from good and cogent reasons."[40]

Apart from the comparative analysis, we are nevertheless able to evaluate an appellant's sentence on its own facts as part of our required due diligence under Article 66(d), UCMJ. "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves."[41] This requires our "individualized consideration of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'"[42] In making this assessment, we analyze the record as a whole.[43] Notwithstanding our significant discretion for determining appropriateness, we must remain mindful that we may not engage in acts of clemency.[44]

### 2. *Appellant's Case Is Not Closely Related to the Other Cases He Identifies*

Appellant argues that his case is closely related to those of the appellants in *United States v. Melbourne*[45] and *United States v. Chambers*,[46] but only

---

[37] *United States v. Widak*, No. 201500309, 2016 CCA LEXIS 172, at *7, (N-M. Ct. Crim. App. Mar. 22, 2016) (unpublished) (per curiam) (citations omitted).

[38] *United States v. Noble*, 50 M.J. 293, 295 (C.A.A.F 1999).

[39] *Lacy*, 50 M.J. at 287 (citation omitted).

[40] *United States v. Moore*, No. 201100670, 2012 CCA LEXIS 693, at *4. (N-M. Ct. Crim. App. May 24, 2012) (unpublished) (citing *Kelly*, 40 M.J. at 570).

[41] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[42] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)).

[43] *Healy*, 26 M.J. at 395.

[44] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[45] 58 M.J. 682 (N-M. Ct. Crim. App. 2003).

[46] 54 M.J. 834 (N-M. Ct. Crim. App. 2001).

because he was found guilty of drunken operation of a vehicle. However, he points out that the appellants in those other cases also pleaded guilty to negligent homicide, a fact not present in his case. He also argues that despite the fact that he was not convicted of homicide he received a sentence comparable to what the appellants in those cases received, and thus, he contends that his circumstances warrant less punishment.

At the time of his misconduct, Seaman (E-3) [SN] Melbourne was assigned to a ship homeported in Norfolk, Virginia.[47] While intoxicated, he drove his car at a high speed into Willoughby Bay, adjoining Norfolk Naval Base, resulting in the drowning death of his passenger.[48] A military judge sitting as a general court-martial found SN Melbourne, pursuant to his pleas, guilty of violating a lawful general order, reckless operation of a motor vehicle resulting in death, drunken operation of a motor vehicle resulting in death, and negligent homicide.[49] SN Melbourne's adjudged sentence was 20 month's confinement, forfeiture of all pay and allowances, reduction to E-1, and a bad conduct discharge.[50]

Steelworker Second Class (E-5) [SW2] Chambers' misconduct occurred while he was driving his truck from New Orleans, Louisiana towards Bay Saint Louis, Mississippi.[51] He fell asleep at the wheel, causing his truck to hit a guardrail, then a concrete wall, and flip over, resulting in his passenger's death.[52] A military judge sitting as a general court-martial found SW2 Chambers, pursuant to his pleas, guilty of drunken driving resulting in injury and negligent homicide.[53] His adjudged sentence was confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1, with all confinement in excess of one year suspended.[54]

However, the misconduct in Appellant's case, unlike that in the cases of SN Melbourne and SW2 Chambers, occurred while Appellant was deployed in a foreign country and the death of a host country national was directly

---

[47] *Melbourne*, 58 M.J. at 684.

[48] *Id.*

[49] *Id.* at 683.

[50] *Id.*

[51] *Chambers*, 54 M.J. at 834.

[52] *Id.* at 834-35.

[53] *Id.* at 834.

[54] *Id.*

related to or resulted from the misconduct. Moreover, unlike Appellant, neither SN Melbourne nor SW2 Chambers was a member of military law enforcement who abused his position to facilitate his misconduct. Furthermore, unlike Appellant the Sailors in the other cases were not convicted of conspiracy. For these reasons, we find that Appellant's case is not closely related to SN Melbourne's or SW2 Chambers' case. Therefore, we do not look to see whether Appellant's sentence is highly disparate as compared to the sentences in those cases.

### 3. Appellant's Sentence Was Not Inappropriately Severe

Appellant negotiated with the convening authority to disapprove confinement in excess of three years. He did not negotiate any protection from a punitive discharge. The military judge properly ensured that Appellant voluntarily entered into the pretrial agreement. He also asked whether the Defense wished to withdraw from the agreement, and Appellant declined. Indeed, Appellant received the benefit of his bargain, but now contends the length of the sentence is excessively severe. As we recently articulated in *United States v. Casuso*, we question an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty."[55]

Even if we were to disregard the terms of Appellant's pretrial agreement, we would still find that his approved sentence was not inappropriately severe. We acknowledge that Appellant presented significant evidence in extenuation and mitigation, including: evidence of his cooperation with NCIS in an unrelated investigation; evidence that he was the first responder to a single-vehicle accident that occurred in the United States and that saved the life of a passenger involved in that accident; evidence of his struggles in his childhood, and his impressive military record. However, his crimes occurred while forward-deployed, were facilitated through his abuse of the special trust conferred upon him as a member of military law enforcement, and the death of a host nation national was directly related to or resulted from his offenses. Weighing the properly admitted evidence in aggravation against evidence in extenuation and mitigation, we are convinced that justice was done and Appellant received the punishment he deserves.[56]

---

[55] *United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328 at *8 (N-M. Ct. Crim. App. June 30, 2021) (unpublished).

[56] *See Healy*, 26 M.J. at 395.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and find no error materially prejudicial to Appellant's substantial rights occurred.[57] Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Chief Judge MONAHAN and Senior Judge STEPHENS concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[57] Articles 59 & 66, UCMJ