*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Michael C. GLEASON, Staff Sergeant**
United States Army, Appellant

**No. 18-0305**
Crim. App. No. 20150379

Argued February 19, 2019—Decided June 6, 2019

Military Judges: Rebecca K. Connally (trial) and
Jacob D. Bashore (*DuBay* hearing)

For Appellant: *Robert Feldmeier*, Esq. (argued)*; Major Todd W. Simpson* and *Captain Joseph C. Borland*.

For Appellee: *Captain Natanyah Ganz* (argued)*; Colonel Steven P. Haight* and *Lieutenant Colonel Eric K. Stafford* (on brief)*; Captain Jeremy S. Watford*.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY and Judge OHLSON joined. Judge RYAN and Judge MAGGS each filed a separate dissenting opinion.

————————

Judge SPARKS delivered the opinion of the Court.

Contrary to his pleas at a general court-martial, Appellant was convicted by a panel of officer members of six specifications of assault consummated by battery, two specifications of aggravated assault, one specification of adultery, and one "novel" specification of interfering with an emergency call, in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934 (2012). The adjudged and approved sentence provided for a reduction to E-1, seven years of confinement, and a dishonorable discharge. The United States Army Court of Criminal Appeals set aside the guilty finding as to the adultery specification but affirmed the remaining findings and the sentence. Appellant then petitioned this Court, and we granted review on the following issue:

>     Whether the Army Court erred by affirming a novel
>     specification covered by an enumerated Art. 134,
>     UCMJ offense.

For the reasons set forth below, we hold the "novel" Article 134, UCMJ, charge of interfering with an emergency call fails to state an offense because the offense is already listed inside Article 134's framework and is therefore barred by pt. IV, para. 60.c.(6)(c) of the *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*).

## I. Background

Specialist (SPC) JW and Appellant were involved in a romantic relationship and lived together. On the evening in question, SPC JW returned home to find Appellant upset. When SPC JW tried to leave the house to avoid a confrontation, Appellant "clotheslined" her with his arm, jumped on top of her, and stuck his fingers down her throat. When SPC JW stood up, she punched Appellant in the face. Appellant then put SPC JW into a chokehold until she nearly passed out. Shortly thereafter, SPC JW told Appellant she wanted to die and Appellant responded by pointing a gun at her face. SPC JW explained when Appellant pointed the gun at her, he:

>     asked me if I wanted to die, and I said no, and then
>     he pointed it at himself and said you know, because
>     I'll kill myself too, and that was when I was
>     devastated, and you know, I was crying, and I told
>     him I can't believe you'd do this to me, this is
>     wrong, and as I was saying this, he was dumping
>     the bullets into his hands, and then he turned the
>     gun around to where he could see inside the thing
>     and he said look, it wasn't loaded this whole time,
>     and I was like you just did that right in my face, I
>     saw you, and he tried to argue with me, and I told
>     him what he was doing wasn't right. So my phone
>     was behind me along with my keys, and I told him I
>     was calling the police, and he jumped on top of me
>     at that point and he took my phone and my keys
>     and told me that I wasn't calling anyone and I
>     wasn't going anywhere.

Appellant kept SPC JW's phone and keys but permitted her to leave the house. After SPC JW left the house, Appellant followed her down the street and offered to return her belongings if she returned home. SPC JW complied and Appellant returned her phone and keys. After receiving her

possessions, SPC JW again left the house, got in her car and drove a short distance away, where she called a friend to pick her up. The next morning, SPC JW reported the incident to her section noncommissioned officer.

## II. Discussion

Although he did not raise the issue at trial, Appellant now argues the "novel" offense of interfering with an emergency call fails to state an offense because it covers the same ground as the enumerated Article 134, UCMJ, offense of obstructing justice.[1]

Whether a specification fails to state an offense is a question of law we review de novo.[2] *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). Because Appellant did not challenge the specification at trial, we review his challenge to the "novel" specification for plain error. *See United States v. Tunstall*, 72 M.J. 191, 196 (C.A.A.F. 2013) (reviewing whether a specification failed to state offense for plain error where the appellant failed to object to the specification at trial).

As we stated in *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017):

> [T]he President has constrained the Government's charging strategy: "[i]f conduct by an accused does not fall under any of the listed offenses for violations of Article 134 in this Manual (paragraphs 61 through 113 of this Part), a specification not listed in this Manual may be used to allege the offense." *MCM* pt. IV, ¶ 60.c.(6)(c). Relying on the plain language of the President's guidance, this Court has held that the government

---

[1] The version of Rule for Courts-Martial (R.C.M.) 907(b) in effect at the time of Appellant's court-martial provided that the failure to state an offense was nonwaivable grounds for dismissing a specification at any stage of the proceedings. *MCM* pt. II, R.C.M. 907(b)(1)(B) (2012 ed.). We have interpreted this provision as follows: "[W]hen defects in a specification are raised for the first time on appeal, dismissal of the affected charges or specifications will depend on whether there is plain error …." *United States v. Humphries*, 71 M.J. 209, 213–14 (C.A.A.F. 2012).

[2] At the outset, we emphasize that this opinion relates specifically to novel offenses drafted against an accused under clauses 1 and 2 of Article 134, UCMJ.

> may not charge a "novel" offense if the offense is
> otherwise listed as an Article 134, UCMJ, offense.
> In other words, if an offense is "already listed
> inside [Article 134's] framework," it may not be
> charged as a "novel" general disorder offense.

*Id.* at 95 (alterations in original) (citations omitted). Thus, as expressed in the context of this case, if the alleged conduct falls under any of the offenses listed by the President in the *MCM* under Article 134, UCMJ, then the conduct is necessarily *already listed* within the framework of Article 134, UCMJ.

The Government referred a "novel" Article 134, UCMJ, specification against Appellant. Specification 1 of Charge III alleged in pertinent part that:

> [Appellant] knowingly and wrongfully interfere[d]
> with Private First Class J.W.'s ability to place an
> emergency phone call by taking her telephone from
> her when she went to call the police and that such
> conduct was to the prejudice of good order and
> discipline in the armed forces and of a nature to
> bring discredit upon the armed forces.

Part IV, para. 96 of the *MCM* already contains an offense of obstruction of justice which lists four elements. The elements of obstruction of justice are:

> (1) That the accused wrongfully did a certain act;
>
> (2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;
>
> (3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and
>
> (4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*Id.* pt. IV, para. 96.b.(1)–(4).

The gravamen of Appellant's Article 134, UCMJ, general disorder specification is Appellant's interference with SPC JW's ability to place an emergency call to the police. One must necessarily view this conduct within the circumstances in which it arose. In determining whether this alleged conduct already falls under a listed offense, the focus is on

specific conduct committed under specific circumstances. After all, the proof required for such an offense is:

> (1) That the accused did or failed to do a certain act, and;

> (2) That *under the circumstances*, the accused's *conduct* was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM* pt. IV, para. 60.b.(1)–(2) (emphasis added). Additionally, the earlier quoted language from *Guardado* anticipates a relatively broad approach in analyzing conduct alleged in novel specifications. Thus, we need not confine ourselves to an element-by-element comparison between the drafted offense and the offense listed in the *MCM*.

Here, the circumstances are that Appellant assaulted and pointed a gun at SPC JW moments before she tried to place the emergency call to the police. We need only look to the President's explanation of the listed offense of obstructing justice, which states:

> Examples of obstruction of justice include … by means of bribery, intimidation, misrepresentation, or force or threat of force delaying or preventing communication of information relating to a violation of a criminal statute of the United States to a person authorized by a department, agency, or armed force of the United States to conduct or engage in investigations or prosecutions of such offenses; or endeavoring to do so.

*MCM* pt. IV, para. 96.c. The nature of the acts leading to Appellant taking SPC JW's telephone suggests Appellant was by intimidation and by force or the threat of force delaying or preventing communication of information to police relating to an assault. This conduct falls squarely within the President's explanation of the obstruction of justice offense.

By using a "novel" specification, the Government relieved itself of having to prove the second and third elements of obstructing justice. *MCM* pt. IV, paras. 96.b.(2), (3). As we stated in *Guardado*, "In deleting a vital element, the Government, in effect improperly reduced its burden of proof. Such an outcome illustrates the reason for the limits of pt. IV, ¶ 60.c.(6)(c) and cannot be countenanced." 77 M.J. at 96. The Government contends it did not charge this

"novel" offense to avoid these elements, but because Appellant engaged in unique misconduct, different from obstruction of justice. As the Government later conceded at oral argument, however, the "novel" offense could have been charged as obstruction of justice. If an offense is already listed inside Article 134's framework, it may not be charged as a "novel" general disorder offense. *Guardado*, 77 M.J. at 95.

Finally, we are cognizant of the fact that there are myriad examples of conduct posing a threat to good order and discipline that are not accounted for in the listed offenses included in the *MCM* under Article 134, UCMJ. And, it is beyond cavil that the UCMJ must retain enough flexibility for the commander to address such conduct. On the other hand, we are reminded of the United States Supreme Court's observation in *Parker v. Levy*, albeit the Supreme Court was addressing a vagueness and overbreadth challenge, that "[Article 134] has been construed by the United States Court of Military Appeals or by other military authorities in such a manner as to at least partially narrow its otherwise broad scope." 417 U.S. 733, 752 (1974). The Supreme Court saw military appellate courts as stewards of Article 134, UCMJ, and as checks against its potentially over-expansive use. Here, the ultimate military authority, the Commander-in-Chief, has already listed the Article 134, UCMJ, offense of obstruction of justice, and Appellant's conduct under the circumstances of this case clearly falls under that offense.

We hold the "novel" offense arising from Appellant's interference with SPC JW's ability to place an emergency call to the police was barred by *MCM* pt. IV, para. 60.c.(6)(c) and, therefore, fails to state an offense under the UCMJ.[3] Accordingly, the Government plainly erred in charging the "novel" offense.

---

[3] There might very well be circumstances in which wrongfully interfering with the response of certain authorities, such as medical personnel for example, might be appropriately charged in a novel specification. That case is not before us, and nothing in this opinion should be taken as a pronouncement on any such case in the future.

### III. Judgment

The decision of the United States Army Court of Criminal Appeals regarding Specification 1 of Charge III is set aside and that offense is dismissed. The remaining findings are affirmed. The sentence is set aside. The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals to either reassess the sentence based on the affirmed findings or order a sentence rehearing.

Judge RYAN, dissenting.

In *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017), and *United States v. Reese*, 76 M.J. 297 (C.A.A.F. 2017), we examined the application of a long-standing limitation, prescribed by the President in *Manual for Courts-Martial, United States* pt. IV, para. 60.c.(6)(c) (2012 ed.) (*MCM*),[1] on the government's ability to charge novel specifications under Article 134, UCMJ, 10 U.S.C. § 934. The majority misunderstands that limitation, and reads *Guardado* and by extension *Reese*, on which *Guardado* relies, far too broadly and, indeed, misapplies them. *United States v. Gleason*, __ M.J. __ (6) (C.A.A.F. 2019).

The President has placed two discrete limitations on the government's ability to draft specifications under Article 134, UCMJ, 10 U.S.C. § 934.[2] The first, referred to as the preemption doctrine, "prohibits application of Article 134 to conduct covered by Articles 80 through 132." *MCM* pt. IV, para. 60.c.(5)(a). The second constraint, at issue here, limits the government's charging decisions by preventing the drafting of a novel specification where the President has already listed[3] an offense under Article 134, UCMJ, containing the

---

[1] This limitation was first introduced in the 1984 *MCM. MCM*, pt. IV, para. 60.c.(6)(c) (1984 ed.).

[2] There is no question in my mind that the President has the authority to place these narrowing constraints on the government's charging decisions under Article 134, UCMJ. *See Parker v. Levy*, 417 U.S. 733, 753–56 (1974). The Constitution vests in the President "[t]he executive Power," and provides that he "shall be Commander in Chief" of the armed forces, U.S. Const. art. II, §§ 1, 2, and the "[p]ower of the executive to establish rules and regulations for the government of the army, is undoubted." *United States v. Eliason*, 41 U.S. 291, 301 (1842); *see United States v. Czeschin*, 56 M.J. 346, 348–49 (C.A.A.F. 2002); *United States v. Davis*, 47 M.J. 484, 486 (C.A.A.F. 1998); *United States v. Miller*, 47 M.J. 352, 356 (C.A.A.F. 1997); *cf. United States v. Jones*, 68 M.J. 465, 471 (C.A.A.F. 2010).

[3] *MCM* pt. IV, para. 60.c.(6)(c) refers to offenses described by the President within Article 134, UCMJ, as "listed offenses," whereas *MCM* pt. IV, para. 60.c.(5)(a) refers to offenses outside of Article 134 as "covered" by the other punitive articles in the con-

core of the elements contemplated by the novel specification. The *MCM* instructs that: "[i]f conduct by an accused does not fall under any of the listed offenses for violations of Article 134, UCMJ, in this Manual (paragraphs 61 through 113 of this Part) a specification not listed in this Manual may be used to allege the offense." *MCM* pt. IV, para. 60.c.(6)(c).

Importantly, paragraphs 60.c.(5)(a) and 60.c.(6)(c) in pt. IV of the *MCM* are the only limitations placed by the President on the government's ability to charge offenses under Article 134, UCMJ. The clear purpose of both limitations is to prevent the government from taking Article 134, UCMJ, as far as the statutory language might permit. *See Parker*, 417 U.S. at 753–56. They do so by precluding the government from taking an existing UCMJ offense or a presidentially listed Article 134, UCMJ, offense, removing an important element—such as the requisite intent—and charging the remaining elements as a "novel" Article 134, UCMJ, offense. *See Guardado*, 77 M.J. at 95; *Reese* 76 M.J. at 302. Just as prosecutorial interpretation of a criminal statute gives way to Congress' determination that an offense, such as larceny, Article 121, UCMJ, 10 U.S.C. § 921, contains certain elements, *see generally Jones*, 68 M.J. at 471; *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979), so too must it give way to the President's determination that an offense, such as obstruction of justice, *MCM* pt. IV, para. 96.b., contains certain elements. *See United States v. Forrester*, 76 M.J. 479, 485–87 (C.A.A.F. 2017); *see also United States v. Wilson*, 76 M.J. 4, 7–8 (C.A.A.F. 2017); *United States v. Miller*, 67 M.J. 87, 88–91 (C.A.A.F. 2008); *United States v. Guess*, 48 M.J. 69, 71–72 (C.A.A.F. 1998); *Miller,* 47 M.J. 356–57.

*Reese* and *Guardado* implicated obvious examples of the government taking an offense listed by the President under Article 134, UCMJ, and drafting a novel specification that

---

text of the preemption doctrine. I adhere to this nomenclature for clarity.

failed to allege one of the elements of that offense.[4] It is that charging strategy that is prohibited by *MCM* pt. IV, para. 60.c.(6)(c), and precisely the conduct that this Court focused on and disallowed in *Guardado* and *Reese*.

In contrast, the Government's charging decision in this case was entirely consonant with the plain language of *MCM* pt. IV, para. 60.c.(6)(c). As Judge Maggs ably explains, *Gleason*, __ M.J. at __ (1–4) (Maggs, J., dissenting), the novel specification here is not contained within the elements of the listed Article 134, UCMJ, of obstruction of justice—"knowingly and wrongfully interfer[ing] with [the] ability to place an emergency phone call"—and thus does not fall under a listed Article 134, UCMJ, offense. *See generally MCM* pt. IV, para. 61-113.

Moreover, the Government's burden of proof was not lessened by removing an element as was the case in *Guardado* and *Reese*; the Government's burden changed to include the elements of the novel offense, elements that the Government would not have had to prove if it had charged Appellant with obstruction of justice. *Gleason*, __ M.J. at __ (3–4) (Maggs, J., dissenting). In essence, what happened here is in contradistinction with the facts of *Guardado*, where, "[i]n deleting a vital element, the Government, in effect improperly reduced its burden of proof." 77 M.J. at 96.

I further agree with Judge Maggs that the Court's reasoning is flawed because it looks to the " 'circumstances' proved at trial to determine the 'nature of the acts' of which Appellant was charged," and thus "improperly relies on the evidence presented at trial in determining the nature of the acts alleged in the novel specification." *Gleason*, __ M.J. at __ (2) (Maggs, J., dissenting). Whether a novel specification

---

[4] As *Reese* makes clear, these cases do not deal with the preemption doctrine, which compares the novel specification with UCMJ offenses outside Article 134, UCMJ. 76 M.J. at 302. Instead, they analyze *MCM* pt. IV, para. 60.c.(6)(c), which prevents the government from charging a novel specification where the "gravamen" of the elements of the novel charge are already contained in an offense listed inside Article 134, UCMJ. *Guardado*, 77 M.J. at 96.

fails to state an offense because it falls under a listed offense, is determined by comparing the language of the specification to the elements the President delineated for the listed offense. *See United States v. Sutton*, 68 M.J. 455, 457 (C.A.A.F. 2010) ("[T]he standard for determining whether a specification states an offense is whether the specification alleges 'every element' of the offense either expressly or by implication." (quoting *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006))); *United States v. Mayo*, 12 M.J. 286, 288 (C.M.A. 1982) ("A specification fatally flawed because it does not contain an allegation of fact essential to proof of the offense charged is not restored to legal life by the Government's production at trial of evidence of the fact."), *overruled on other grounds by United States v. Fosler*, 70 M.J. 225, 232 (C.A.A.F. 2011). This can (and most often should) be decided prior to trial. Consistent with this principle, the Court in *Reese* and *Guardado* looked only at what was alleged in the respective novel specifications and did not consider the evidence presented at trial. *Reese*, 76 M.J. at 302−03; *Guardado*, 77 M.J. at 95−96.

The majority here focuses not on elements, but instead breezily concludes that: "*Guardado* anticipates a relatively broad approach in analyzing conduct alleged in novel specifications. Thus, we need not confine ourselves to an element-by-element comparison between the drafted offense and the offense listed in the *MCM.*" *Gleason*, __ M.J. at __ (5). I disagree. Instead, I agree with Judge Maggs that when analyzing whether a novel specification comports with *MCM* pt. IV, para. 60.c.(6)(c), it is the elements set forth in the novel charge that control, not the "conduct" apart from the elements, and not on evidence adduced at trial. *See Sutton*, 68 M.J. at 457; *Mayo*, 12 M.J. at 288. I part ways with Judge Maggs' opinion only because I disagree that *Reese* and *Guardado*, "recognized a new limitation on charging offenses under Article 134, UCMJ." *Gleason*, __ M.J. at __ (1) (Maggs, J., dissenting). Rather, it is today's majority's understanding of that limitation that is novel. I respectfully dissent.

Judge MAGGS, dissenting.

In *United States v. Reese*, 76 M.J. 297 (C.A.A.F. 2017), and *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017), this Court recognized a new limitation on charging offenses under Article 134, UCMJ, 10 U.S.C. § 934 (2012). The new limitation is that the government cannot use a novel specification to allege an offense if the conduct alleged in the novel specification is within the "framework" of an Article 134, UCMJ, offense that the President has already enumerated and defined in pt. IV of the *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*). *Reese*, 76 M.J. at 302−03; *Guardado*, 77 M.J. at 95−96. The Court today holds that the specification at issue in this case violates this newly recognized limitation and therefore fails to state an offense. I disagree.[1]

---

[1] The opinions in *Reese* and *Guardado* did not identify any article of the UCMJ that empowers the President to declare, either directly or by implication, that military judges must dismiss charges alleging misconduct that otherwise meets the statutory requirements of Article 134, UCMJ, for failing to state an offense. The Court's opinion today also cites no article conferring such power. Because I conclude that the novel specification in this case does not fall under the enumerated specification of obstruction of justice in pt. IV of the *MCM*, the issue of the President's power is not essential to my analysis. The Court should entertain arguments about this subject in future cases.

The new limitation first recognized in *Reese* and *Guardado* is distinct from the traditional Article 134, UCMJ, preemption doctrine described in *MCM* pt. IV, para. 60.c.(5)(a). Since 1953, this Court has held that the UCMJ's punitive articles—as opposed to the specifications that the President has listed in the *MCM*—can preempt novel specifications under Article 134, UCMJ. *See United States v. Norris*, 8 C.M.R. 36, 40 (C.M.A. 1953). We have identified a statutory basis for this traditional form of preemption. It follows from the text of Article 134, UCMJ, in particular that article's initial "disclaiming phrase, '[t]hough not specifically mentioned in this chapter.'" *United States v. Herndon*, 36 C.M.R. 8, 10 (C.M.A. 1965) (citing *United States v. Deller*, 3 C.M.A. 409, 12 C.M.R 165 (1953), and other decisions). This phrase would not appear to cover offenses enumerated only in pt. IV of the *MCM*.

**I.**

The novel specification at issue in this case accused Appellant of violating Article 134, UCMJ, when he:

> knowingly and wrongfully interfere[d] with Private First Class J.W.'s ability to place an emergency phone call by taking her telephone from her when she went to call the police and that such conduct was to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

The Court today concludes that this specification fails to state an offense because the misconduct alleged falls within the framework of the enumerated offense of obstruction of justice in *MCM* pt. IV, para. 96.b., but the specification does not require the Government to prove all of the elements of obstruction of justice.

The first step of the Court's reasoning is to look at the "circumstances" proved at trial to determine the "nature of the acts" of which Appellant was charged. *United States v. Gleason*, __ M.J. __ (5–6) (C.A.A.F. 2019). The Court concludes in this case that "[t]he nature of the acts leading to Appellant taking SPC JW's telephone suggests Appellant was by intimidation and by force or the threat of force delaying or preventing communication of information to police relating to an assault." *Id.* at __ (5). To the Court, this sounds like a possible case of obstruction of justice.

A problem with this reasoning is that the Court improperly relies on the evidence presented at trial in determining the nature of the acts alleged in the novel specification. Whether a specification states an offense depends on the language of the specification, not on what facts are proved at trial. *See United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). Consistent with this principle, the Court in *Reese* and *Guardado* looked only at what was alleged in the respective novel specifications and did not consider the evidence presented at trial. *Reese*, 76 M.J. at 302−03; *Guardado*, 77 M.J. at 95−96. In my view, if the Court had limited itself to considering the words of the novel specification in this case, it would have reached a different conclusion.

The novel specification required the Government to prove that Appellant "knowingly and wrongfully interfere[d] with Private First Class J.W.'s ability to place an emergency phone call by taking her telephone from her when she went to call the police." These words by themselves do not suggest an offense having the nature of obstruction of justice. While the words of the specification do embrace the circumstances actually proved at trial, they also would cover circumstances having no connection to a criminal proceeding or the administration of justice. For example, the same specification could have been used if Appellant had prevented SPC JW from placing an emergency call to the police to report a missing child or a traffic hazard requiring urgent police attention. Thus, I do not agree that the nature of the acts alleged in the specification bring the specification within the framework offense of obstruction of justice.

The second step of the Court's reasoning is to examine the elements of the enumerated offense of obstruction of justice as they are listed in *MCM* pt. IV, paras. 96.b.(2) and (3). The Court concludes that, by using a novel specification, the Government reduced its burden of proof because it "relieved itself of having to prove the second and third elements of obstructing justice." *Gleason*, __ M.J. at __ (5). Specifically, the Court indicates that the Government did not have to prove that there were "criminal proceedings pending," *MCM* pt. IV, para. 96.b.(2), or that the accused acted with an "intent to influence, impede, or otherwise obstruct the due administration of justice," *id.* pt. IV, para. 96.b.(3). The Court therefore concludes that the new limitation recognized in *Reese* and *Guardado* applies in this case and that the novel specification fails to state an offense.

A problem with this second step of the Court's reasoning is that the Court focuses only on what the Government did not have to prove under the novel specification and not on what the Government did have to prove. In fact, the wording of the novel specification required the Government to prove three elements that the Government would not have had to prove if the Government had charged Appellant with obstruction of justice. These elements are: (1) a person was attempting to make an emergency phone call; (2) the accused interfered with this attempt; and (3) the accused's

interference was knowing and wrongful. Thus, even though the Government did not have to prove everything that the offense of obstruction of justice would require, the Government took on a different burden. Accordingly, the novel offense did not fall within the framework of the offense of obstruction of justice.

**II.**

In *Parker v. Levy*, 417 U.S. 733 (1974), the United States Supreme Court considered, among other issues, a vagueness challenge to a novel specification under Article 134, UCMJ. The specification at issue alleged that the accused, an Army officer, had uttered words to enlisted soldiers criticizing the Vietnam war and telling them that African American soldiers "should refuse to go to Viet Nam and if sent should refuse to fight." *Id.* at 738 n.5. The Supreme Court concluded that the specification was not void for vagueness because the accused "could have had no reasonable doubt" that his conduct was " 'to the prejudice of good order and discipline in the armed forces.' " *Id.* at 757 (quoting Article 134, UCMJ). The same conclusion is true here. Although the President has not yet defined the offense of interfering with an emergency call in pt. IV of the *MCM*, preventing someone from making an emergency call to the police is so inherently wrongful that Appellant could have foreseen a charge under Article 134, UCMJ. Indeed, as the Government points out, some states by statute have specifically established the crime of interfering with an emergency call. *See, e.g.,* Tenn. Code Ann. § 65-21-117 (effective July 1, 2012). Thus while I agree with the Court's expressed caution about the "potentially over-expansive use" of novel specifications under Article 134, UCMJ, *see Gleason*, __ M.J. at __ (6), I do not see any overreach here. For these reasons, I respectfully dissent.

4